927 F.2d 828
 1991 A.M.C. 2627, 59 USLW 2613
 NICKLOS DRILLING COMPANY and Compass Insurance Company, Petitioners,
v.
Floyd COWART and Director, Office of Workers' Compensation
Programs, U.S. Department of Labor, Respondents.
PETROLEUM HELICOPTERS, INC. and American Home Assurance
Company, Petitioners,
v.
Mary E. BARGER and Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
 Nos. 89-4944, 90-4022.
 United States Court of Appeals,
Fifth Circuit.
 March 29, 1991.
 
 H. Lee Lewis, Jr., Griggs & Harrison, Houston, Tex., for Nicklos Drilling Co. and Compass Ins. Co.
 Lloyd N. Frischhertz, Seelig, Cosse', Fischhertz & Poulliard, New Orleans, La., for Floyd Cowart.
 Donald Shire, Joshua T. Gillelan, II, Samuel J. Oshinsky, Sol., U.S. Dept. of Labor, Washington, D.C., for Director.
 Linda Meekins, Clerk, Benefit Review Bd., U.S. Dept. of Labor, Washington, D.C., for other interested parties.
 Vance E. Ellefson, C. Theodore Alpaugh, III, Metairie, La., for Petroleum Helicopters, Inc. and American Home Assur. Co.
 Mary Ellen Blade, Beckenstein, Oxford, Radford & Johnson, Beaumont, Tex., for Mary E. Barger.
 On Petition for Review of a Decision and Order of The Benefits Review Board, U.S. Department of Labor.
 Before CLARK, Chief Judge, GEE,* POLITZ, KING, JOHNSON, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHE, WIENER and BARKSDALE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Today we sit en banc to resolve a conflict in the law of our Circuit. In the cases consolidated on this appeal, two panels of our Court held that section 33 of the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Sec. 933 (1988), conditions eligibility for continuing LHWCA benefits on the employer's and the employer's insurance carrier's prior written approval of any settlement between an injured employee and a third person for less than his LHWCA compensation entitlement;[1] and we further held that this approval requirement applies regardless of whether the employer or the employer's insurer was paying LHWCA benefits at the time of settlement. See also Petroleum Helicopters, Inc. v. Collier, 784 F.2d 644, 647 (5th Cir.1986). In an unpublished opinion, Kahny v. Director, Office of Workers' Compensation Programs, 729 F.2d 777 (5th Cir.1984), a panel of our Court held the contrary: that section 33's approval requirement applies only if the employer or its carrier is paying LHWCA benefits at the time of the settlement. Resolving this conflict, we now hold that the plain language of section 33 shows Congress's unambiguous intent to require prior approval whether or not the employer or its carrier was actually paying LHWCA benefits at the time of settlement. In the face of this manifest congressional intent, no administrative reinterpretation can be countenanced.
 
 Background
 
 2
 In each case before us today, a person seeking LHWCA compensation for death or injury settled a related claim with a third person; and, in each case, the settlement occurred at a time when the person was not receiving LHWCA benefits, was for less than the employee's compensation entitlement, and was consummated without the approval of the employer or his carrier. In Nicklos Drilling Co. v. Cowart, 907 F.2d 1552 (5th Cir.1990), Floyd Cowart, an employee of Nicklos Drilling Company, sought LHWCA compensation for injuries he had received on Nicklos's drilling rig. At a time when Mr. Cowart was not receiving LHWCA benefits from Nicklos or its insurance carrier, he settled his claim against Transco Exploration Company, which owned the offshore platform that supported Nicklos's rig. In Petroleum Helicopters, Inc. v. Barger, 910 F.2d 276 (5th Cir.1990), Mary Barger, the widow of Walter Barger, sought LHWCA compensation for her husband's death. Mr. Barger died when the helicopter that he was piloting crashed. The helicopter was owned by his employer, Petroleum Helicopters, Inc. (PHI), and manufactured by Bell Helicopter Textron. Ms. Barger settled her claim against Bell at a time when she was not receiving LHWCA benefits from either PHI or its insurance carrier. The panel opinions contain more detailed accounts of the facts.
 
 Review of an Administrative Interpretation
 
 3
 Generally, the question before us is whether section 33 of the LHWCA permits any exception to its requirement that all settlements with third persons that leave the employer liable for further compensation benefits have the prior written approval of the employer and the employer's insurance carrier. Specifically, the Office of Workers' Compensation Programs (OWCP) urges us to accept its in-house administrative interpretation that section 33 requires prior written approval only if the employer or its carrier is actually paying LHWCA benefits at the time of settlement. In Kahny we accepted OWCP's administrative interpretation, but in Collier, Nicklos Drilling, and Barger we rejected this interpretation.
 
 
 4
 In support of its position, the OWCP points out that section 33's purpose is to allow a person entitled to LHWCA benefits to receive those benefits and still pursue civil remedies against third persons. According to the OWCP, the predecessor to section 33 required an election of remedies and often caused severe financial hardship to individuals who chose to pursue civil action and forego LHWCA benefits. OWCP argues that to alleviate this hardship Congress expressly eliminated election of remedies by enacting section 33(a). Extending this argument, OWCP maintains that financial hardship can be avoided only by paying benefits during the pendency of a civil action; thus, settlements require prior written approval only if the employer or its carrier is actually paying benefits. The actual payment of benefits, according to OWCP, is the price which Congress intended employers to pay for the right of prior approval.
 
 
 5
 Second, OWCP maintains that section 33(g)(2) can be given complete meaning only if we accept OWCP's administrative interpretation. For convenience, we set out the relevant portions of section 33 here:
 
 
 6
 (a) Election of remedies
 
 
 7
 If on account of a disability or death for which compensation is payable under this chapter the person entitled to such compensation determines that some person other than the employer or a person or persons in his employ is liable in damages, he need not elect whether to receive such compensation or to recover damages against such third person.
 
 
 8
 * * * * * *
 
 
 9
 (g) Compromise obtained by person entitled to compensation
 
 
 10
 (1) If the person entitled to compensation (or the person's representative) enters into a settlement with a third person referred to in subsection (a) of this section for an amount less than the compensation to which the person (or the person's representative) would be entitled under this chapter, the employer shall be liable for compensation as determined under subsection (f) of this section only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation (or the person's representative). The approval shall be made on a form provided by the Secretary and shall be filed in the office of the deputy commissioner within thirty days after the settlement is entered into.
 
 
 11
 (2) If no written approval of the settlement is obtained and filed as required by paragraph (1), or if the employee fails to notify the employer of any settlement obtained from or judgment rendered against a third person, all rights to compensation and medical benefits under this chapter shall be terminated, regardless of whether the employer or the employer's insurer has made payments or acknowledged entitlement to benefits under this chapter.
 
 
 12
 33 U.S.C. Sec. 933 (1988). OWCP argues that the language following the disjunctive "or" in section 33(g)(2) would be rendered partially meaningless if prior written approval of all settlements were always required, because the alternative of merely notifying the employer of such a settlement would have no function.
 
 
 13
 We begin our consideration of OWCP's position by noting the Supreme Court's guidance in cases involving administrative interpretations.
 
 
 14
 When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 15
 Chevron U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (footnotes omitted).
 
 
 16
 More recent, and more closely in factual point, is the Court's decision in Demarest v. Manspeaker, --- U.S. ----, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991), where the Court unanimously declined to give effect to a "longstanding administrative construction" in the face of clear statutory language granting witness fees to incarcerated state prisoners who testify in federal court proceedings.
 
 
 17
 The Court of Appeals, while agreeing that the statutory analysis outlined above was "[o]n its face ... an appealing argument," [Demarest v. Manspeaker] 884 F.2d [1343] at 1345 [10th Cir.1989], relied on longstanding administrative construction of the statute denying attendance fees to prisoners, and two Court of Appeals decisions to the same effect, followed by congressional revision of the statute in 1984.
 
 
 18
 But administrative interpretation of a statute contrary to language as plain as we find here is not entitled to deference. See Public Employees Retirement System of Ohio v. Betts, 492 U.S. 158 [109 S.Ct. 2854, 106 L.Ed.2d 134] (1989). There is no indication that Congress was aware of the administrative construction, or of the appellate decision at the time it revised the statute. Where the law is plain, subsequent re-enactment does not constitute an adoption of a previous administrative construction. Leary v. United States, 395 U.S. 6, 24-25 [89 S.Ct. 1532, 1541-42, 23 L.Ed.2d 57] (1969).
 
 
 19
 When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances.... We cannot say that the payment of witness fees to prisoners is so bizarre that Congress "could not have intended" it. [Quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982).]
 
 
 20
 --- U.S. at ----, 111 S.Ct. at 603-04 (footnote omitted).
 
 
 21
 As Collier, Nicklos Drilling, and Barger--our three most recent and only published opinions--demonstrate, we believe that the words of section 33 are unambiguous and therefore foreclose OWCP's contrary administrative interpretation. Yet, OWCP has raised two arguments that, if true, would introduce ambiguity concerning the congressional intent underlying section 33.
 
 
 22
 Turning to OWCP's first argument, we are unpersuaded that congressional desire to eliminate the financial hardship attendant on election of remedies necessitates an exception to section 33's approval requirement. First, the language of section 33 provides no exception to its approval requirement. Second, section 33(g)(2) does expressly provide that LHWCA benefits "shall be terminated, regardless of whether the employer or the employer's insurer has made payments or acknowledged entitlement to benefits under this chapter." 33 U.S.C. Sec. 933(g)(2) (1988) (emphasis added). This language squarely refutes OWCP's contention that Congress intended the actual payment of benefits to be a tradeoff for the right of prior approval. Third, OWCP's reading of section 33 is not necessary to prevent financial hardship to persons pursuing civil remedies. Section 33(a) expressly provides that persons entitled to LHWCA benefits need not make an election of remedies; rather, they may receive the LHWCA benefits while simultaneously pursuing the civil remedy. To the extent that LHWCA claimants may choose to ignore their rights and responsibilities under section 33, Congress did not and cannot have intended to guard against such self-inflicted hardship.
 
 
 23
 We are also unpersuaded that OWCP's administrative interpretation is necessary to give meaning to the phrase "or if the employee fails to notify the employer of any settlement obtained from or judgment rendered against a third person." 33 U.S.C. Sec. 933(g)(2) (1988). While superficially persuasive, OWCP's argument does not stand careful scrutiny. First, the quoted phrase is necessary because it extends the notification requirement to judgments. Second, the quoted phrase requires that the claimant notify the employer of any settlement or judgment whatever. As we note above, prior written approval is required only if, as Sec. 33(g)(1) provides, the amount of the settlement is "less than the compensation to which the [claimant] would be entitled under this chapter." Congress intended to require prior written approval in the limited circumstance where a claimant settles for an amount smaller than his LHWCA compensation entitlement. By contrast, only notification is required when a claimant receives a judgment or settles for an amount exceeding his LHWCA compensation entitlement. Congress's schemes of approval and notification dovetail perfectly; there is no ambiguity.
 
 Conclusion
 
 24
 After carefully considering the permissibility of OWCP's administrative interpretation in light of the plain language of section 33, we conclude that Congress has spoken unambiguously and so as to leave no room for such embroidery. We therefore hold, in accord with the clear terms of the statute, that section 33's prior written approval requirement applies regardless of whether the employer or its carrier is paying LHWCA benefits at the time of settlement. By Chevron, there it ends. Accordingly, we AFFIRM our decision in Nicklos Drilling, AFFIRM our decision in Barger, and OVERRULE our earlier, unpublished decision in Kahny.
 
 
 25
 POLITZ, Circuit Judge, with whom KING and JOHNSON, Circuit Judges, join, dissenting:
 
 
 26
 I respectfully dissent. In 1984, as a member of an oral argument panel I authored the unpublished opinion in Kahny v. Arrow Contractors, 729 F.2d 777 (5th Cir.1984), (aff'd mem.), in which we accepted the interpretation of the Director of the Office of Workers Compensation Programs, that the phrase "person entitled to compensation" as used in 33 U.S.C. Sec. 933(g) meant a person either receiving compensation benefits or the beneficiary of an ALJ award. I then considered such to be a proper interpretation of that statutory phrase; I am of the same opinion still.
 
 
 27
 The Director of the OWCP has so interpreted the phrase in an untold number of cases. In his briefs the Director has detailed the reasoning behind the interpretation, including the statutory and legislative history of the parent legislation pertinent to the phrase. The Director advises that his conclusion is based not only upon that statutory and legislative history, but is informed by years of practical experience in administering the Longshore and Harbor Workers Act in many thousands of cases.
 
 
 28
 The majority rejects the Director's interpretation out of hand. I am not disposed to do so. Deference must be more than lip service. Deference presupposes deferring when one disagrees, otherwise there is no deference.
 
 
 29
 In this circuit we have recognized, both en banc and in panels, that the construction placed on the Act by the Director is to be given the deference we are constrained to give an administrative agency. See, e.g., Boudreaux v. American Workover, 680 F.2d 1034, 1046 n. 23 (5th Cir.1982) (en banc ); Alford v. American Bridge, 642 F.2d 807, 809 n. 2 (5th Cir.1981).
 
 
 30
 I view the Director's construction of the subject phrase to be a reasonable one, given the statutory and legislative history of the Act. Early on a person injured on the job had to elect either to proceed under the Act or to seek recovery in tort. Congress deemed this too harsh and eliminated the election requirement. In its place it placed the consent and, later, notice requirements in the Act. Both have a place in a comprehensive scheme which I perceive as just to all concerned. One need not elect but simultaneously may proceed in comp against the employer, while proceeding in tort against a responsible third party. If one does the latter and is receiving comp benefits from the former one must secure the employer's consent to settle if one is to preserve the right to receive comp payments in excess of the tort settlement. That is totally appropriate and fair because the employer is entitled to a credit for the sums recovered in tort in the instance of a job-related injury caused by a tortiously-acting third person. But the requirement is not absolute.
 
 
 31
 Assume a not infrequent occurrence. The employer denies owing compensation and refuses to pay. The employee seeks tort recovery from a third party. A settlement is offered. Why must the employee, who was denied comp, go hat in hand to the employer and request permission to settle his claim? Why should he? This query is not simply erecting a straw man. In one of the consolidated cases, Barger, we find the anomaly of the employer defensing a Jones Act claim by Barger's survivor by formally judicially claiming that it owed only LHWCA comp payments for Barger's accidental death, and then defensing the subsequent comp claim by insisting that the survivor had forfeited her comp claim because she did not get the employer's approval to settle the tort claim against a third-party tortfeasor.
 
 
 32
 I agree with the Director's long-standing construction that it is not reasonable to require an employee to secure the approval of the employer before making a tort settlement if the employer has declined to pay comp benefits. I can conceive of no valid purpose to be served by requiring otherwise other than to serve as the basis for forfeiture of a legitimate comp claim by an injured worker or the survivors of a deceased worker. The parties argue that the statute was amended to overrule the Director's erroneous interpretation. If that were so one would expect some small reference to such in the legislative history. There is none. There is no acceptable explanation offered for the absence of such.
 
 
 33
 In 1984 the provision containing the phrase at issue was reenacted without change. Surely that ought to be some indication that the universal construction given the phrase by the Director, multiple ALJs, the Benefits Review Board, and several courts has received congressional approval. I am so persuaded.
 
 
 34
 Finally, the provision for notice added in 1984, section 933(g)(2), adds to the force of the Director's construction. The Act first provides for approval of the employer if comp is being paid. In the notice provision the Act goes on to require notification of a settlement or judgment, whether comp is being paid or not. To me this latter is to alert the employer and comp carrier of the existence of an offset against any comp entitlement. It is a reasonable requirement to prevent double recovery. Nothing more.
 
 
 35
 I am convinced that the Director's interpretation in this instance is reasonable and I therefore respectfully dissent.
 
 
 
 *
 Judge Thomas Gibbs Gee participated in the en banc consideration of this appeal but resigned from the court on February 1, 1991
 
 
 [1]
 Section 33(a) of the LHWCA defines a third party as "some person other than the employer or a person or persons in his employ." 33 U.S.C. Sec. 933(a) (1988)