# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 98-41133

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FLORA ALICIA OCANA,

Defendant-Appellant.

---

Appeals from the United States District Court
for the Southern District of Texas

---

February 18, 2000

Before KING, Chief Judge, POLITZ, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Flora Alicia Ocana appeals the sentence she received after pleading guilty to conspiracy to possess with intent to distribute approximately 90 kilograms of marihuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(c). Ocana challenges the district court's enhancement of her sentence based on post-conviction conduct. This post-conviction conduct led to an increase in Ocana's base level offense, and a sentence enhancement for role in the offense. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 1997 Flora Alicia Ocana ("Ocana") was arrested after a traffic stop and found to be in possession of 90 kilograms of marihuana. In May 1997, Ocana and her co-defendant Keenan Stroud Bennet were indicted on one count of conspiracy to possess marihuana with intent to distribute, and a second count of possession of marihuana with intent to distribute. On July 25, 1997 Ocana plead guilty to the first count of the indictment. Ocana also agreed to provide a truthful rendition of the facts for the probation department in exchange for the government's agreement to dismiss count two of the indictment and recommend a sentence at the low end of the applicable guideline range. The initial presentence report ("PSR") was submitted September 26, 1997 and determined that the total offense level was 21, which was based on an offense level of 24 for possession of 90 kilograms of marihuana and a three-level decrease for acceptance of responsibility. This initial determination equaled a guideline range of 37-46 months imprisonment.

In November 1997, border patrol agents stopped Ricardo Flores ("Flores"), Norma Salina Cervantes ("Cervantes"), and Cervantes's three sons. The border patrol discovered 48 kilograms of marihuana. Cervantes immediately informed the border patrol and FBI that the drugs belonged to Ocana, who had hired them to transport the marihuana ("November 1997 offense" or "post-conviction conduct").[1] On June 5, 1998 the government provided ex parte notice to the court concerning alleged misconduct of the defendant. Based on the information about the November 1997 offense the probation officer filed an addendum to the PSR ("second addendum") recommending that

---

[1] Ocana was indicted June 10, 1998 for her part in this activity. The Government later dropped the charges. At oral argument the prosecutor stated that the reason he dropped the indictment was that any sentence rendered for the November 1997 offense would have run concurrent to the sentence received in the present case.

Ocana be sentenced based on a total offense level of 28. This total offense level included a base offense level of 26, a figure that included the additional 48 kilograms of marihuana. In the second addendum the PSR also recommended a two-level upward adjustment for role in the offense and recommended denying the three-level decrease for acceptance of responsibility.

Ocana's attorney filed objections to the second addendum to the PSR. Ocana argued that the November 1997 offense was not relevant to her sentencing, and she also denied ownership or responsibility for the marihuana that was found by the border patrol. The probation officer filed a third addendum to the PSR in response to Ocana's objections. The third addendum to the PSR stated that pursuant to 1B1.3(a)(2) the November 1997 offense was part of the same course of conduct as the offense for which Ocana plead guilty, and therefore was required to be considered in determining Ocana's sentence.

At the sentencing hearing FBI Agent Rob Andrews ("Agent Andrews"), Flores, and Cervantes were called to testify. On the morning of the hearing Flores and Cervantes informed Agent Andrews, and testified that Ocana had recruited them to transport marihuana to Florida on at least two other occasions before they were apprehended by the border patrol in November 1997. Cervantes and Flores testified that Ocana told them to rent a van, and take their kids on the trip to make it look like a family vacation. They claimed that on all of these trips they drove the van to Winter Garden, Florida, found a hotel, and then contacted Ocana who would fly to Florida and meet them at the hotel. They stated that Ocana would pick up the van from them at the hotel and complete the final delivery of the drugs. After hearing this testimony the court overruled Ocana's objections and adopted the findings of the second addendum to the PSR. The court accepted the inclusion of the 48 kilograms of cocaine in the determination of the base offense level, the two-level enhancement for

3

Ocana's role in the offense, and the rejection of the three-level reduction for acceptance of responsibility. The sentencing guideline range for a total offense level of 28 is 78 to 97 months. The court sentenced Ocana to a 90 month term of imprisonment and a three year term of supervised release.

DISCUSSION

Ocana raises three issues on appeal. First, Ocana argues that the district court erred in increasing her base offense level based on conduct that occurred after she was convicted. Second, Ocana challenges the district court's finding of a two-level enhancement for role in the offense based upon evidence of Ocana's alleged post-conviction conduct. Finally, Ocana contends that the district court erred in relying on her alleged co-conspirators testimony because it did not have a sufficient indicia of reliability.

A.      Standard of Review

This court normally reviews the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error. A sentence will be upheld unless it was imposed in violation of law, was an incorrect application of the sentencing guidelines, or is outside the range of the applicable sentencing guideline. United States v. Hernandez-Guevara, 162 F.3d 863,876 (5th Cir. 1998). Failure to object to either the PSR or the district court's sentence results in review for plain error. See United States v. Ruiz, 43 F.3d 985, 988.

In the present case, the Government urges this court to review the district court's application of the sentencing guidelines for plain error because Ocana did not raise the same objections in the

4

district court that she raises in this appeal. We find that Ocana did make written objections to the PSR. The third addendum to the PSR acknowledges Ocana's objections to the second addendum to the PSR regarding the increase in her base offense level and the adjustment for her role in the offense. Ocana's objection to the second addendum's recommendation on her base offense level was as follows:

> "The defendant asserts that the information in the Second Addendum to the Presentence Report is not relevant conduct impacting her sentence of conviction. The defendant denies the ownership or any responsibility for the marihuana that Norma Cervantes and Ricardo Flores were caught transporting."

Ocana's objection to the PSR's recommendation of an upward adjustment role in the offense was "that she did not have a role in the instant offense concerning Norma Cervantes and Ricardo Flores."

The purpose of requiring defendants to make timely objections to the PSR and actual sentence is "founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact." Ruiz, 43 F.3d at 988 (quoting United States v. Calverley, 37 F.3d 160 (5th Cir. 1994) (en banc)). Ocana's objections fulfill this stated purpose. While she did not specifically cite to the USSG section which the PSR applied, she did make a general objection that notified the court of her disagreement with the use of the November 1997 offense in her sentencing, and gave the district court the opportunity to address the relevance of the unadjudicated conduct. Ocana's objections to the PSR were in writing, and there was a written response by the probation officer that referenced § 1B1.3(a)(2). The district court was clearly notified of the grounds upon which Ocana's objections

5

were being made.[2] See Krout, 66 F.3d at 1434 (a party should raise a claim of error in a manner that allows the district court to correct itself). Therefore, we conclude that Ocana sufficiently raised the issues which she now appeals, and we will review her claims under the normal standard of review for Sentencing Guideline issues.

B.      Base Offense Level

Ocana argues that the district court erred in considering the November 1997 offense in the calculation of her base offense level because this conduct occurred after her conviction. The PSR stated that Ocana's base level offense was increased pursuant to USSG § 1B1.3. Under § 1B1.3 district courts are permitted to consider unadjudicated offenses which occur after the offense of conviction for sentencing purposes if the unadjudicated offense is "relevant conduct". In order for an unadjudicated offense to be "relevant conduct" it must be part of the same course of conduct, common scheme or plan as the offense of conviction. Vital, 68 F.3d 114, 118 (5th Cir. 1995). The district court found that the November 1997 offense was part of the same course of conduct as the April 1997 incident for which Ocana was convicted.

A finding by the district court that unadjudicated conduct is part of the same course of conduct or common scheme or plan is a factual determination subject to review by this court under the clearly erroneous standard.    See Vital, 68 F.3d at 118. Therefore, in order for Ocana to demonstrate that the district court incorrectly applied the sentencing guidelines under § 1B1.3 she

_____

[2] Also Ocana's objection used the term "relevant conduct", which is the identical terminology used in USSG § 1B1.3.

6

must show that the district court's finding that the offenses involving Cervantes and Flores were part of the same course of conduct as the April 1997 offense was a clearly erroneous finding.

Offenses qualify as part of the same course of conduct if they are "sufficiently connected or related to each other to warrant a conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G § 1B1.3 application note 9(b). The factors that are appropriate to weigh in making the determination as to whether the offenses are sufficiently connected or related include "the degree of similarity of the offenses, the regularity of the offenses, and the time interval between the offenses." Id. When one of the factors is absent, a stronger presence of at least one of the other factors is required. Id.

In the present case, there is not a significant degree of similarity between the April 1997 offense and the post-conviction conduct involving Cervantes and Flores. The one major similarity is that the offenses all involved transporting marihuana to Florida.[3] Other than the common drug and delivery location the April 1997 offense is significantly dissimilar from the offenses involving Cervantes and Flores. First, there is no evidence of similar accomplices, common source, or supplier. See United States v. Wall, 180 F.3d 641, 646 (5th Cir. 1999) (common source, supplier and modus operandi considered by court in determining similarity of offenses). In the April 1997 offense Ocana claimed to be transporting drugs at the behest of Keenan Bennet, and informed the FBI that she had met Bennet through a lawyer named Bob Meier. In the Cervantes and Flores offenses they claim that Ocana recruited them to transport drugs and that the other person involved in the transaction was a

---

[3] There is some dispute as to whether Florida was the intended destination for the April 1997 offense. Ocana's co-defendant in that case, Bennet, claimed that he and Ocana were originally supposed to complete the transaction in Atlanta. However, Ocana in cooperation with the FBI made the drug delivery to Bennet in Florida.

car wash owner named Aaron Munoz. The modus operandi for the offenses is also different. In April 1997, Ocana drove a van and met Bennet at an airport. In the Cervantes and Flores offenses they drove a rented van to a hotel and Ocana flew and met them at the hotel in Florida. Based on all of these factors the April 1997 offense and the Cervantes/Flores offenses are not sufficiently similar.

Therefore, one of the other factors in determining same course of conduct; temporal proximity of the offenses, or regularity of the offenses must be stronger. In the present case, there is close temporal proximity of the offenses. Cervantes and Flores claim that they made their first trip transporting drugs for Ocana in July 1997, and that they made two other trips in September and November. Therefore these offenses took place only three months after Ocana's offense of conviction. It appears that the only time there was no drug activity was the time between Ocana's arrest in April and her guilty plea in July. Even if we discount the testimony of Cervantes and Flores about the incidents that were not disclosed until the day of the sentencing hearing[4], and consider only the November 1997 offense, at the most only seven months elapsed between Ocana's offense of conviction and this November 1997 offense.

It is well settled in this circuit that offenses which occur within one year of the offense of conviction may be considered relevant conduct for sentencing. See United States v. Bethely, 973 F.2d 396, 400-01 (5th Cir. 1992) (finding drug transactions that occurred six months prior to the offense of conviction to be relevant conduct); United States v. Moore, 927 F.2d 828, 828 (5th Cir. 1991) (drugs seized five months prior to conviction could be considered relevant conduct). In two recent cases this court has found that the time interval between offenses is too remote to consider the

_____

[4] On the day of the hearing Cervantes and Flores testified that they also transported drugs for Ocana in July and September. They had previously told the border patrol and the FBI that the November 1997 offense was their first time transporting drugs for Ocana.

8

extraneous offense to be relevant conduct. In both of those cases the offense of conviction took place more than a year in time from the offense in question. See United States v. Miller, 179 F.3d 961, 966 n. 10 (5th Cir. 1999) (finding that a drug offense that occurred 21 months prior to the offense of conviction was too remote in time to be considered a positive factor for same course of conduct); Wall, 180 F.3d 641, 645-46 (5th Cir. 1999) (finding that drug offenses separated by four and five years lacked temporal proximity to the offense of conviction). In the present case, because the offense of conviction and the November 1997 offense took place within seven months of each other there is sufficient temporal proximity to find that the offenses were part of the same course of conduct.

Finally, the third factor of regularity of the offenses is also present. Cervantes and Flores testified that Ocana recruited them for trips in July, September and November. Therefore, Ocana was participating in drug transactions bimonthly. Based on the close temporal proximity and regularity of the offenses the district court did not clearly err in finding that the April 1997 offense and the offenses involving Cervantes and Flores were part of the same course of conduct.

Ocana relies on our decision in Lara v. United States, 975 F.2d 1120, 1128 (5th Cir. 1992), for the proposition that a sentencing enhancement for post-conviction conduct should be applied to the crime committed while on release and not the original crime for which the defendant is currently being sentenced. However, in Lara the sentence enhancements were made by the district court pursuant to 18 U.S.C. § 3147 and USSG § 2J1.7, not under USSG § 1B1.3 which allows for adjustment of base offense level for post conviction conduct under certain circumstances.[5]

_____

[5] The appellant also cites United States v. Pace, 955 F.2d 270, 277 (5th Cir. 1992) as authority for the argument that district court's should not enhance sentences based on post conviction offenses. However, as in Lara the Pace decision interpreted a sentence enhancement pursuant to 18 U.S.C. §

At the sentencing hearing the district court heard and weighed the testimony of Agent Andrews, Cervantes, and Flores and concluded that Ocana's alleged participation in drug transactions involving Cervantes and Flores were part of the same course of conduct as the offense of conviction. After a careful review of the record we conclude that the district court's finding was not clearly erroneous. Thus, based on the finding that the post conviction conduct was relevant conduct under § 1B1.3 the district court properly applied the guidelines and adjusted Ocana's base offense level upward to include the marihuana found in the possession of Cervantes and Flores in November 1997.

C.      Role in the Offense

The district court also adopted the PSR's recommendation that Ocana receive a two-level upward adjustment for role in the offense. The original PSR contained no adjustment for role in the offense. The probation officer added this recommendation for a two level enhancement based solely on Ocana's post-conviction conduct. The appellant argues that the district court erred in determining her role in the offense based solely on the facts of the November 1997 offense which as post-conviction conduct had no connection to the offense for which she was convicted.

Sentencing guideline §3B1.1 allows for a sentence enhancement based on the defendant's role in the criminal activity. Contrary to the appellant's argument, post-conviction conduct may be considered in determining a defendant's role in the offense, if that post-conviction conduct is determined to be relevant conduct under the sentencing guidelines. The introductory commentary for section 3B1.1 instructs that "the determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of 1B1.3 (Relevant Conduct)...and not solely on the basis

3147, not § 1B1.3(a)(2).

10

of elements and acts cited in the count of conviction." U.S.S.G. § 3B1.1 introductory commentary. Also, this court has held that conduct which is the basis for an upward adjustment made pursuant to section 3B1.1 must be "anchored to the transaction, however we will take a common-sense view of just what the outline of that transaction is. It is not the contours of the offense charged that defines the outer limit of the transaction; rather it is the contours of the underlying scheme itself. All participation firmly based in that underlying transaction is ripe for consideration in adjudging leadership role." United States v. Mir, 919 F.2d 940, 944 (5th Cir. 1990). Mir points out that the introductory commentary of section 3B1.1 shows that section 3B1.1 is "intended to comport with other guideline sections allowing a sentencing judge to look beyond the narrow confines of the offense to consider all relevant conduct."[6] Id. at 945; see also, United States v. Montoya-Ortiz, 7 F.3d 1171, 1181 (5th Cir. 1993).

Therefore, in determining Ocana's role in the offense the district court properly considered all transactions that it determined to be relevant conduct under the sentencing guidelines. The district court made a determination that the relevant conduct in the present case included the offenses involving Cervantes and Flores. In Part B, we affirmed the district court's ruling regarding relevant conduct. Thus, as a matter of law the district court properly considered the post-conviction conduct when determining Ocana's role in the offense.

---

[6] Other circuits have also held that the introductory commentary to section 3B1.1 instructs district courts to consider all relevant conduct when determining a defendant's role in the offense, and that this relevant conduct can include offenses for which the defendant was neither charged or convicted. See e.g., United States v. Bapack, 129 F.3d 1320, 1325-26 (D.C. Cir. 1997); United States v. Billingsley, 115 F.3d 458, 465 (7th Cir. 1997); United States v. Savage, 67 F.3d 1435, 1443 (9th Cir. 1995).

We review the district court's fact-finding regarding role in the offense for clear error.  See United States v. Rodriguez, 897 F.2d 1324, 1325 (5th Cir. 1990), cert. denied, 498 U.S. 857, 111 S.Ct. 158, 112 L.Ed.2d 124 (1990). Cervantes and Flores both testified that Ocana recruited them to transport marihuana to Florida.  They further testified that Ocana provided them money to rent a van, and paid them for their participation in the transactions. While there was no independent corroboration for any of the allegations made by Cervantes and Flores, the district court found their testimony reliable.[7]  In light of the introductory commentary to section 3B1.1 which allows the district court to consider all relevant conduct in its determination of role in the offense, and the testimony of Cervantes and Flores which clearly implicates Ocana as the leader, recruiter, and manager of their drug transactions we conclude that the district court did not err in its upward adjustment of Ocana's sentence for role in the offense.

D.      Co-Conspirator testimony

At the sentencing hearing the district court heard testimony from Cervantes and Flores, and used their testimony as a basis for determining Ocana's base offense level and her role in the offense.

---

[7] In cases in this circuit co-conspirator testimony alone typically has not been used to determine a defendant's role in the offense.  In Mir, we upheld a sentence enhancement for role in the offense, and in that case the DEA special agent who worked undercover in the drug cartel testified that Mir was one of the leaders of the cocaine distribution network.  The DEA agent gave multiple examples of the work of Mir's organization and his first hand observations of Mir's involvement. See Mir, 919 F.2d at 942.

In United States v. Barbontin, 907 F.2d 1494, 1497 (5th Cir. 1990) we noted that as evidence to support an upward adjustment for role in the offense the government offered the testimony of a DEA agent who testified that his investigation had established that Barbontin was the leader of a large drug importation enterprise.

In the present case, due to the inconsistencies of the co-conspirators' testimony independent corroboration of their statements would certainly have enhanced the weight of the evidence. Nonetheless, the introductory commentary for section 3B1.1 and the case law do not require independent corroboration of co-conspirator testimony in assessing role in the offense.

12

Ocana argues that Cervantes and Flores testimony did not meet the standard for reliability as set forth in USSG § 6A1.3, because their testimony was inconsistent with their prior statements, and they both had motive to testify falsely.

This court reviews a district court's determinations of witness credibility for clear error. United States v. Gaytan, 74 F.3d 545, 558 (5th Cir. 1996). For the purposes of sentencing the district court may consider information without regard to its admissibility. Id. Furthermore, the defendant bears the burden of demonstrating that the information the district court relied on is "materially untrue". United States v. Young, 981 F.2d 180, 185 (5th Cir. 1992).

Our review of the record confirms Ocana's claim that the testimony of Cervantes and Flores contains multiple inconsistencies. Cervantes and Flores inconsistent testimony alone, however, is not enough to demonstrate that this testimony upon which the district court relied is materially untrue. The inconsistent pattern of their testimony in and of itself does not command that we ignore the district court's appreciation of their testimony as reliable. Given our highly deferential standard of review for factual determinations, we cannot hold that the district court's credibility determination was clearly erroneous.

CONCLUSION

We affirm the district court's consideration of post-conviction conduct to adjust Ocana's base offense level pursuant to USSG § 1B1.3. We also affirm the district court's upward adjustment of Ocana's sentence for role in the offense, and the district court's reliance on the co-conspirator's testimony at the sentencing hearing.

AFFIRMED.

13

POLITZ, Circuit Judge, dissenting:

Stripped to essentials, the defendant's sentencing exposure was nearly tripled by evidence of subsequent conduct consisting of inconsistent testimony of witnesses the government candidly recognized as presenting "a credibility problem." Those of us charged with applying federal criminal sanctions are acutely aware that post-sentencing guideline procedures have impacted markedly the criminal law/punishment scene. Some aspects of the changes we can and do accept as legislative prerogative. Others are not so readily acceptable. The instant case presents just such a conundrum.

Ocana is guilty of the offense for which she was indicted in May 1997 and pled guilty in July 1997.[8] She subsequently was indicted in July 1998 for conduct allegedly occurring in November 1997. That indictment was dismissed by the government, ostensibly because the sentence for it and the present offense would likely have been made to run concurrent. I am neither persuaded nor impressed by this explication given by the government at oral argument.

It is a basic tenet of our constitutional system that guilt of a criminal offense can be established only by a free and voluntary plea of guilty accepted by the court after careful examination, or by a finding by a judge or jury, based on reliable evidence proving guilt beyond a reasonable doubt. Only then may one constitutionally be punished for that criminal offense. Today's decision, and others like it that appear to be part of an ever increasing number, erode that basic tenet to the point that we must, in all candor, concede that today punishment for criminal conduct is not limited to the criminal conduct for which one has pled guilty or which has been established by proof beyond a reasonable doubt.

---

[8]Conspiracy to possess with intent to distribute approximately 90 kilograms of marihuana, in violation of 21 U.S.C. §§ 846, 841 (a)(1), and 841 (b)(1)(c).

In my judgment, the due process clause does not permit of this erosion. Some of these shortcuts, simplifications of criminal procedure, as some would suggest, violate the due process clause which imposes a burden on the government to prove every element of a charged criminal offense beyond a reasonable doubt,[9] a requirement dating from our early years as a nation.[10] The reason is obvious – requiring the proof of guilt beyond a reasonable doubt reduces the risk of convictions and resultant punishment resting on factual error.[11] Recognizing the vital role the reasonable doubt standard plays in our criminal justice schema, the Supreme Court has noted that "a person accused of a crime . . . would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case."[12]

One would assume that one could understand this teaching by the Supreme Court as meaning that those things essential to the question of one's guilt of a criminal offense, and those things that factor critically into the punishment therefor, must be established by proof beyond a reasonable doubt. At this point in time, however, such is not the case. At this point in time the proof of guilt of the charged offense must be beyond a reasonable doubt but the proof of "facts" upon which the sentence is based, the *sine qua non* of punishment for that criminal offense, need only be by a level of proof

---

[9]**United States v. Williams**, 20 F.3d 125 (5th Cir.), *cert. denied*, 513 U.S. 891, and *cert. denied,* 513 U.S. 894 (1994).

[10]**In re Winship**, 397 U.S. 358 (1970).

[11]**Id.** at 363.

[12]**Id**. at 363 (quoting with approval the state court in **W. v. Family Court**, 24 N.Y.2d 196, 205 (N.Y. 1969)).

16

far below that mandated in a criminal trial. Indeed, I presume to suggest, on more than a few occasions by a level of proof which would not carry the day in a contested civil case.

"Relevant conduct" is an important, if indeed not critical, part of the sentencing formula. The sentencing guidelines require the government to prove relevant conduct by a mere preponderance of the evidence.[13] Information considered at sentencing must have a "sufficient indicia of reliability," and district courts are accorded broad discretion in considering the reliability of information supporting relevant conduct.[14]

I perceive the instant case as embodying an unacceptable merging of the reasonable doubt standard into the preponderance of evidence standard, and less. By accepting the government's proof of the subsequent conduct by evidence which, in my opinion, would not have sufficed in a criminal trial, indeed probably would have been found wanting in a civil trial, and thereby markedly increasing Ocana's exposure under the sentencing guidelines, neuters the constitutional assurance that one shall not be deprived of liberty and freedom based upon anything less than proof beyond a reasonable doubt.

My majority colleagues opine that one's guilt must be proven beyond a reasonable doubt but the punishment one receives for that transgression may be based on facts proven to some uncertain level of reliability, including that only sufficient to prevail in a civil case and less. I cannot accept and lend support to this proposition. I consider what has happened to this defendant in the sentencing process unjust. I must respectfully dissent.

---

[13]**United States v. Lampton**, 158 F.3d 251 (5th Cir. 1998), *cert. denied*, U.S. __, 119 S.Ct. 1124, and *cert. denied*, __ U.S. __, 119 S.Ct. 1125 (1999).

[14]U.S.S.G. § 6A1.3(a); **United States v. Martinez-Moncivais**, 14 F.3d 1030 (5th Cir.), *cert. denied*, 513 U.S. 816 (1994).