**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-50538
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEVEN GLENN DERDEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
(02-CR-24)
_____

February 12, 2003

Before JONES, WIENER, and DeMOSS, Circuit Judges.

PER CURIAM[*]:

Defendant-Appellant Steven Glenn Derden appeals from the sentence imposed by the district court after he pleaded guilty to stealing and possessing anhydrous ammonia with the intent to manufacture methamphetamine. We affirm.

I. FACTS AND PROCEEDINGS

In January 2002, Derden and Joshua Self were arrested following their unsuccessful attempt to steal anhydrous ammonia from a farm in Mertens, Texas. At the time of the arrest, police

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

discovered, either on the arrestees' persons or in their vehicle, six empty propane bottles, heavy-duty rubber gloves of the type used to protect a person from ammonia burns, $3,240 in cash, a small knife, and a brass adapter for a propane bottle. When the police went to the scene of the attempted theft, they discovered another propane bottle, which was three-quarters full of anhydrous ammonia. Self confessed to the police that he and Derden were planning to fill all of the propane bottles with anhydrous ammonia and then sell the filled bottles in Ft. Worth, Texas, where their contents would be used in the manufacture of methamphetamine.

The following month, a grand jury indicted Derden on two counts, one for conspiring to manufacture methamphetamine, and another for stealing and possessing anhydrous ammonia with the intent to manufacture methamphetamine. Derden pleaded guilty to the second count.

Subsequently, Derden appeared before the district court for a sentencing hearing. Pursuant to the plea agreement with Derden, the government submitted a motion to dismiss the first count of the indictment. The Presentence Report ("PSR") recommended a base offense level of 26, which was derived from a cumulative drug quantity of 119.82 kilograms of marijuana, being the total amount of marijuana and marijuana-equivalent drugs seized from Derden in the January 2002 arrest and in three arrests in the prior year.

The reason that the probation officer included the drug quantities from Derden's three prior arrests in the PSR was that

the facts underlying these arrests constituted "relevant conduct."[1] Derden had first been arrested in February 2001 after police discovered, in his apartment, 13.5 ounces of marijuana, 29.6 grams of marijuana, and 17.5 grams of methamphetamine (equivalent to 35.41 kilograms of marijuana). Then, in April 2001, police executed an arrest warrant at Derden's apartment, seizing 271.53 grams of marijuana and 25.59 grams of methamphetamine (equivalent to 51.45 kilograms of marijuana). Finally, in May 2001, Derden was arrested following a traffic stop, and police seized from his vehicle two propane bottles and two propane adapters, a large knife, a syringe, 12.41 grams of methamphetamine, and 8.8 grams of cocaine (equivalent to 26.58 kilograms of marijuana). In the course of Derden's three arrests, the police had seized a total of $5,629 in cash (equivalent to 6.38 kilograms of marijuana).

The PSR also stated that the police knew Derden to be a manufacturer and distributor of drugs. The PSR reported that police detective Kendall Novak had averred that Derden had been manufacturing and distributing methamphetamine for several months prior to the February 2001 arrest, and that evidence of a methamphetamine production process was found in Derden's home. Also, Derden admitted, following the February 2001 arrest, that the $1,793 in cash seized by police at that time was "drug money" and

---

[1] The U.S. Sentencing Guidelines ("the Guidelines" or "U.S.S.G.") permits district courts to take into consideration, for sentencing purposes, conduct not specified in the indictment for which a defendant was convicted. See U.S.S.G. § 1B1.3 (2002).

that he had been selling marijuana on a regular basis.

Although Derden conceded that the May 2001 arrest was for conduct similar to that involved in his January 2002 arrest, he objected to the inclusion of the drug-quantity information from his February and April 2001 arrests. At sentencing, the government sought to support the PSR's position that the drug quantities from all of Derden's prior arrests should be included in the PSR as relevant conduct, which could be considered as part of a common scheme in computing a base offense level.[2] The "common scheme" was Derden's ongoing activities in manufacturing and distributing drugs. In furtherance of the government's support of the information contained in the PSR, it adduced testimony of police officer Trey West that, typically, the quantities of methamphetamine seized from Derden in the February and April 2001 arrests were indicative of an intent to distribute, as opposed to personal use, as was the act of stealing anhydrous ammonia with the intent to manufacture methamphetamine.

The district court denied Derden's objections, finding the evidence sufficient to demonstrate that all three arrests in 2001 were "properly connected" to his January 2002 arrest and thereby constituted "relevant conduct" as "a common scheme or plan." The court thus adopted the PSR's recommended base offense level of 26, which, following adjustments, resulted in a total offense level of

---

[2] U.S.S.G. § 2D1.1, cmt. n.6 & 12 (2002).

The court also granted the government's motion to dismiss the first count of the indictment. Accordingly, the district court sentenced Derden to (1) 60 months' imprisonment, (2) supervision for 3 years following his release from prison, and (3) payment of a $1,000 special assessment. Derden timely filed a notice of appeal.

## II. ANALYSIS

Derden advances two issues on appeal: (1) Did the district court err when it determined that, under the Guidelines, Derden's arrests in February and April 2001 were for acts constituting "relevant conduct," and (2) did the district court err in applying the Guidelines when it used a cross-referenced section that produced a higher base offense level. We address these claims in sequence.

A.   Relevant Conduct Under the Guidelines.

1.   Standard of Review.

We review for clear error a district court's finding of relevant conduct in its determination of a defendant's base offense level under the Guidelines.[3]

2.   Derden's Three Arrests in 2001 Were for Relevant Conduct.

In sentencing a defendant for violating the federal drug laws,

---

[3] United States v. Ocana, 204 F.3d 585, 589 (5th Cir. 2000).

"the base offense level can reflect quantities of drugs not specified in the count of conviction if they were part of the <u>same course of conduct</u> or part of a <u>common scheme or plan</u> as the count of conviction."[4]  The Guidelines thus provide for two types of "relevant conduct."[5]  First, a "course of conduct" comprises offenses that "are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode."[6]  A "sufficient connection" between offenses is determined to exist when three factors are present: "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses."[7]  Second, a "common scheme or plan" is defined as two or more offenses that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar <u>modus operandi</u>."[8]

Derden contends on appeal that his two arrests in early 2001 were not part of a "course of conduct," and thus fail the "relevant conduct" requirements of the Guidelines.  He argues that (1) the drugs and related materials seized in his various arrests differ in

---

[4] <u>United States v. Moore</u>, 927 F.2d 825, 826 (5th Cir. 1991) (emphasis added).

[5] U.S.S.G. § 1B1.3(a)(2).

[6] U.S.S.G. § 1B1.3, cmt. n.9(A).

[7] <u>Id.</u>

[8] U.S.S.G. § 1B1.3, cmt. n.9(B).

6

type and quantity, (2) the "time interval" between his arrests do not evidence any consistency or regularity in his actions, (3) his arrests in February and April 2001 are temporally too attenuated from his arrest in January 2002 to constitute a "sufficient connection," and (4) the only common element in each arrest — the methamphetamine — is insufficient by itself to connect these events. In sum, Derden maintains that his prior arrests in February and April 2001 lack the sufficient similarity, regularity and close temporal relationship needed to qualify as a "single episode," which is the defining element of finding a "course of conduct."

Derden's arguments are misdirected, however, because the probation officer included Derden's prior arrests in the PSR, not as evidence of a "course of conduct," but rather as evidence of a "common scheme or plan." In arguing for the adoption of the PSR before the district court, the government asserted that Derden was a drug manufacturer and distributer, and that each of his prior arrests reflected this common purpose.[9] The district court adopted the PSR's information on Derden's prior arrests as "relevant conduct" because it found that these arrests reflected Derden's common purpose of manufacturing and distributing drugs.

The district court's finding of Derden's common purpose as a

---

[9] U.S.S.G. § 1B1.3, cmt. n.9(B) (explaining that a "common scheme or plan" consists of "two or more offenses...connected to each other by at least one common factor, such as...common purpose").

7

drug manufacturer and distributer was based on evidence of (1) the substantial quantity of drugs seized in each arrest, (2) the substantial amounts of cash seized in each arrest, (3) the methamphetamine manufacturing process seized from Derden's apartment, (4) the police detective's testimony that Derden was a known drug distributer, (5) Derden's February 2001 admission that he was engaged in drug distribution, (6) the use of anhydrous ammonia in manufacturing methamphetamine, and (7) the confession by Self that he and Derden were acting to further the manufacture of methamphetamine. Derden neither specifically objected to any of this evidence, nor offered any countervailing testimony or evidence of his own. Thus, there exists neither relevant evidence nor legal argument to support Derden's contention that the district court clearly erred in its finding that his prior arrests constituted relevant conduct for purposes of sentencing.

This conclusion is consistent with our past decisions reviewing sentences based, in part, on "relevant conduct." "Particularly in drug cases, this circuit has broadly defined what constitutes 'the same course of conduct' or 'common scheme or plan.'"[10] Derden has given us no reason to depart from this practice and adopt his narrow construction of "relevant conduct."

---

[10] United States v. Bryant, 991 F.2d 171, 176 (5th Cir. 1993). Cf. Moore, 927 F.2d at 827 (noting that "[w]e have already held that a court properly may consider the amounts of drugs still under negotiation in an uncompleted distribution when calculating relevant conduct").

8

This is particularly true given the fact that all of Derden's arrests in 2001 occurred less than a year before the offense to which he pleaded guilty, for "[i]t is well settled in this circuit that offenses which occur within a year of the offense of conviction may be considered relevant conduct for sentencing."[11] When we view the record as a whole, we are not left "with the definite and firm conviction that a mistake has been made"[12] by the district court in finding that the quantity of drugs and other factors involved in Derden's prior arrests constituted relevant conduct for sentencing purposes.

B.   The District Court's Use of a Cross-Referenced Section in Setting Derden's Base Offense Level.

1.   Standard of Review.

Derden raises this objection for the first time on appeal. Accordingly, we will review the district court's ruling only for plain error.[13]  As such, we may act on Derden's post-sentence objection only if (1) there was an error, (2) the error was clear, obvious or readily apparent, and (3) this error affected

---

[11] Ocana, 204 F.3d at 590.  See also United States v. Anderson, 174 F.3d 515, 526-27 (5th Cir. 1999) (affirming district court's finding of relevant conduct for illegal timber removal given "common purpose" and "similar modus operandi," despite the occurrence of the acts "over a period of several years").

[12] Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (specifying the standard for reviewing a district court's findings for clear error).

[13] United States v. Thames, 214 F.3d 608, 612 (5th Cir. 2000).

9

defendant's substantial rights.[14]   It bears emphasizing that determining both that a plain error occurred and that this affected a defendant's substantial rights is a very high hurdle for Derden to surmount, and that such errors "should be corrected on appeal only if they 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'"[15]

> 2.   No Plain Error in District Court's Use of Cross-Referenced Section.

The district court determined Derden's base offense level under § 2D1.1 of the Guidelines, which was cross-referenced by § 2D1.13, the section that was directly applicable to Derden. Section 2D1.13(c)(1) instructs the sentencing court to use § 2D1.1 if "the offense involved unlawfully manufacturing a controlled substance, or attempting to manufacture a controlled substance unlawfully" and the application of § 2D1.1 would result in a higher offense level.[16]  In this case, application of § 2D1.13 resulted in a base offense level of only 12, but the application of § 2D1.1 produced a base offense level of 26.  Therefore, the district court used the latter.

Derden now claims that the district court erred in applying the cross-referenced § 2D1.1, because he was caught only <u>attempting</u>

---

[14] <u>United States v. Vital</u>, 68 F.3d 114, 119 (5th Cir. 1995).

[15] <u>United States v. Calverley</u>, 37 F.3d 160, 164 (5th Cir. 1994) (en banc) (quoting <u>United States v. Atkinson</u>, 297 U.S. 157, 160 (1936)).

[16] U.S.S.G. § 2D1.13(c)(1).

10

to steal anhydrous ammonia.  He argues that § 2D1.13(c)(1) and its commentary require <u>completion</u> of "the intended offense [of] attempting to manufacture the methamphetamine with the anhydrous [ammonia] that [Derden] tried, but failed, to obtain."

This argument is without merit.  First, Derden has offered nothing to show obvious or clear error in the district court's acceptance of the PSR or in the government's argument that the instant offense was part of Derden's ongoing scheme to manufacture and distribute methamphetamine.  Second, Derden pleaded guilty to stealing and possessing anhydrous ammonia with intent to manufacture methamphetamine.  This is an offense that falls within the ambit of the plain wording of § 2D1.12(c)(1), which mandates that the district court use § 2D1.1 when the "offense involves... attempting to manufacture a controlled substance."[17]  Third, and most important, Derden is asking us to review a factual determination of the district court — that Derden was engaged in an ongoing scheme of manufacturing and distributing drugs — yet, as we have held before, "questions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error."[18]  Thus, even assuming _arguendo_ that we could determine that the district court committed an obvious or

---

[17] Section 2D1.1(c)(1) (emphasis added).

[18] Unites States v. McCaskey, 9 F.3d 368, 376 (5th Cir. 1993) (quoting United States v. Lopez, 923 F.2d 47, 50 (5th Cir. 1991)).  See also Vital, 68 F.3d at 119 (quoting same).

11

clear error, we would nevertheless be precluded from revisiting the court's finding under this standard of review.

### III. CONCLUSION

For the foregoing reasons, Derden's sentence is AFFIRMED.