United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 20, 2005**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

––––––––––––

No. 04-41051

––––––––––––

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

FLAVIO RANGEL,

Defendant - Appellant.

–––––––––––––––––––––––––––––––––––

Appeal from the United States District Court
For the Southern District of Texas
USDC No. 1:04-CR-68-ALL

–––––––––––––––––––––––––––––––––––

Before DAVIS, JONES, and GARZA, Circuit Judges.

PER CURIAM:[*]

Flavio Rangel appeals his guilty-plea sentence for possession with intent to distribute

marijuana. Rangel argues that the district court clearly erred in finding that his possession of cocaine

was "relevant conduct" for purposes of U.S.S.G. § 1B1.3, and in considering the amount of cocaine

––––––––––––––––––––

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

in calculating his base offense level under U.S.S.G. § 2D1.1.[1]

I

Rangel was indicted for possession with intent to distribute approximately 316.2 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and possession with intent to distribute approximately 771 grams of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). He pleaded guilty to the marijuana charge and the Government dismissed the cocaine charge.

The presentence report ("PSR") summarized the offense conduct. A confidential informant ("CI") met with Rangel at the Candlewick Apartments in Brownsville, TX, where Rangel showed the CI a kilogram of cocaine. The CI then traveled with Rangel to an apartment on Johnson Street in Brownsville, where Rangel showed the CI 300 pounds of marijuana. Based on information received from the CI, agents observed Rangel the next day leaving the Johnson Street apartment in a Dodge Intrepid, and later that same day observed the car parked outside the Candlewick Apartments. The CI failed to meet with agents as scheduled the following day. The agents, therefore, decided to obtain consent to search both the Candlewick Apartment and the Johnson Street apartment. Upon arrival at the Candlewick Apartments, agents received consent from Maria Isabel Najera, Rangel's girlfriend, to search the Dodge Intrepid)) which she owned but Rangel had repaired. The agents discovered 316.2 grams of cocaine in the trunk of the car. Later, agents made contact with Rangel, who gave them consent to search his residence on Johnson Street and his Oldsmobile. Agents found 771 grams of marijuana in the apartment and two small baggies of cocaine in the Oldsmobile. Rangel admitted

---

[1] Rangel also raised a *Blakely v. Washington*, 542 U.S. 296 (2004) claim in his appeal, but voluntarily dismissed it after the Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005). Presumably, Rangel dropped his *Booker* claim because the district court judge, while sentencing him to 37 months imprisonment, stated that if the federal sentencing guidelines were found unconstitutional, he would order a sentence of four years imprisonment.

to the agents that the marijuana and cocaine were his, including the cocaine found in the Dodge.[2]

The PSR concluded that the cocaine should be considered relevant conduct under § 1B1.3 of the Guidelines. Therefore, both the amount of marijuana and cocaine were used to determine Rangel's base offense level under Guidelines § 2D1.1.[3] Rangel objected, and argued that his conduct did not constitute "relevant conduct" under the Guidelines. The Government offered three exhibits in support of their assertion that the cocaine constituted relevant conduct: (1) a report addressing the seizure of the drugs; (2) the arrest report; and (3) a report concerning the interview with the CI. The district court, over Rangel's objection, adopted the findings and Guidelines application of the PSR and sentenced Rangel to 37 months imprisonment, three years supervised release, and a $100 special assessment fee.

II

On appeal, Rangel only argues that the district court clearly erred in enhancing his sentence based on its consideration of the amount of cocaine seized as relevant conduct under Guidelines § 1B1.3, because his possession of marijuana and cocaine was not part of a "common scheme or plan" or the "same course of conduct." Section 1B1.3(a)(2) authorizes the inclusion of additional drug quantities when the amount seized does not reflect the scale of the offense. The commentary to the Guidelines state that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S. SENTENCING GUIDELINES MANUAL § 1B1.3, cmt. n.10. "Common scheme or plan" is defined as

---

[2] During his rearraignment, Rangel only admitted to ownership of the marijuana.

[3] Under the drug equivalency table, Guidelines § 2D1.1, cmt. n. 10, 316.2 grams of cocaine is the equivalent of approximately sixty-four kilograms of marijuana.

involving two or more offenses that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *Id.*, cmt. n.9(A). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.*, cmt. n.9(B). Factors to consider in a "same course of conduct" determination include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* When one of the factors is absent, a stronger showing of at least one other factor is required. *Id.*

We review a district court's determination of what constitutes relevant conduct for clear error. *United States v. Villanueva*, 408 F.3d 193, 203 n. 9 (5th Cir. 2005). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." *Id.* at 203.

Rangel contends that the district court judge excluded all of the statements made by the CI as hearsay in determining that his possession of cocaine was "relevant conduct." Therefore, Rangel asserts, the only evidence the court considered was that he admitted that both the marijuana and the cocaine belonged to him and that they were seized on the same day. Rangel argues that the offenses involved different drugs in different quantities; the drugs were found in different parts of town; and there was no evidence showing how Rangel obtained the drugs, how long he had the drugs, how the cocaine got into the car, where the drugs came from, where they were going, or whether he had any accomplices.

We do not find that the district court intended to exclude all of the statements made by the CI, but merely those relating to the quantity of drugs the CI claims that Rangel showed him. *See United States v. Slaughter*, 238 F.3d 580, 585 (5th Cir. 2000) ("For sentencing purposes, the district

4

court may consider any relevant evidence, including uncorroborated hearsay statements, if the information has a 'sufficient indicia of reliability to support its probable accuracy.'"). Although the district court judge stated that he was not relying on the hearsay statements of the CI, placing this statement in the context of the sentencing hearing as a whole, we believe that the district court judge excluded only statements from the CI concerning the quantity of drugs that Rangel possessed.

The district court's conclusion that Rangel's possession of cocaine and marijuana were part of a "common scheme or plan" was not clearly erroneous. Rangel admitted that both the marijuana and cocaine were his. The district court could infer, based on the large quantity, that the drugs were not for Rangel's personal use, but that he intended to distribute the marijuana and cocaine. *See United States v. Hunt*, 129 F.3d 739, 742 (5th Cir. 1997) (intent to distribute may be inferred from the possession of an amount of controlled substance too large to be used by the possessor alone). Indeed, the district court concluded from the evidence that it was clear Rangel was involved in the common purpose of illegal drug possession and drug trafficking. *But cf. United States v. Miller*, 179 F.3d 961, 966 n. 8 (5th Cir. 1999) (no "common scheme or plan" simply because two transaction involve amounts of drugs larger than for personal use when other indicia do not in any way support such a conclusion); *United States v. Wall*, 180 F.3d 641, 645 (5th Cir. 1999) ("Although the offenses arguably shared the common general purpose of importing marijuana for distribution in the United States . . . the offenses did not share similar accomplices" or a similar *modus operandi*.). After reviewing the entirety of the record, we are not "left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Moreover, it was not clearly erroneous for the district court to conclude the possession of cocaine and marijuana were "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.

5

SENTENCING GUIDELINES MANUAL § 1B1.3, cmt. n.9(B). The commentary to Guidelines § 1B1.3 provides three factors in determining whether there is a sufficient connection to enhance a sentence based on "relevant conduct" because of "same course of conduct": (1) the degree of similarity between the offenses; (2) the regularity or repetition of the offenses; and (3) the temporal proximity between the offenses. U.S. SENTENCING GUIDELINES MANUAL § 1B1.3 cmt. n.9(B). There is a very strong showing of temporal proximity since the cocaine was seized on the same day as the marijuana. As discussed *supra*, the district court could infer that Rangel intended to distribute the drugs. This conclusion is supported by the CI's statements to government agents. Therefore, the district court could conclude from the evidence that Rangel was regularly involved in illegal drug possession and drug trafficking. To determine whether the offenses are similar, we consider whether drug offenses share a common source, supplier, accomplice, destination, or *modus operandi*. *Wall*, 180 F.3d at 646; *United States v. Booker*, 334 F.3d 406, 415 (5th Cir. 2003)*; United States v. Ocana*, 204 F.3d 585, 590 (5th Cir. 2000). The district court could infer from the statements provided by the CI that Rangel intended to either supply the CI with cocaine and marijuana or intended the CI to be an accomplice in the distribution of the drugs. Reading the record as a whole, we find the district court's finding that Rangel's possession of marijuana and cocaine were part of the "same course of conduct" was not clearly erroneous.

For the foregoing reasons, we AFFIRM Rangel's sentence.