# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10231

United States Court of Appeals
Fifth Circuit

**FILED**
August 2, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

ANTHONY MINOR,

> Defendant - Appellant

———————

Appeal from the United States District Court
for the Northern District of Texas

———————

Before DAVIS, ELROD, and HIGGINSON, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Defendant-Appellant Anthony Minor appeals his conviction and sentence on multiple counts of bank fraud and related offenses. We affirm.

## I.

An employee of Fannie Mae named Katrina Thomas misappropriated personal identification information from approximately one thousand individuals. Thomas gave this identification information to Minor, who used the data to access – and steal money from – those individuals' bank accounts. Specifically, Minor would contact the bank, pretend to be an individual whose

No. 15-10231

identity he had misappropriated, and then transfer money from that individual's account into a separate account which Minor controlled.

A jury found Minor guilty of bank fraud and other related offenses.[1] The district court imposed a below-Guidelines sentence of 192 months' imprisonment. Minor now appeals.

II.

Minor first claims that the district court should have held a *Franks*[2] hearing to determine whether law enforcement officials improperly obtained a search warrant for his vehicle. In *Franks*, the Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.[3]

Minor claims that the agent assigned to his case, Albert Moore, may have provided false information to the magistrate judge when obtaining the search warrant for Minor's vehicle. Agent Moore averred in the warrant affidavit that Will Crain, the director of security at a hotel frequented by Minor, reported

---

[1] Specifically, the jury found Minor guilty of (1) bank fraud; (2) aiding and abetting bank fraud; (3) conspiracy to commit bank fraud; (4) using or trafficking in an unauthorized access device; (5) aggravated identity theft; and (6) aiding and abetting aggravated identity theft.

[2] *Franks v. Delaware*, 438 U.S. 154 (1978).

[3] *Id*. at 155-56.

2

that he had seen Minor carrying merchandise between his hotel room and his vehicle on multiple occasions. The magistrate judge accepted Agent Moore's representation and issued the search warrant, which ultimately revealed evidence of Minor's crimes.

According to Minor, however, Crain testified at trial that he did *not* in fact see Minor carrying merchandise between his hotel room and his vehicle. Minor therefore requests a hearing to determine whether Agent Moore's warrant affidavit contained false information.

To obtain a *Franks* hearing, Minor "needed to make a 'substantial preliminary showing' that the affiant['s] statements were deliberately false or made with reckless disregard for the truth."[4] Minor concedes that Agent Moore "d[id] not intentionally insert false information into the affidavit . . . or act with reckless disregard for the truth." Because Minor failed to make the requisite "substantial preliminary showing," he is not entitled to a *Franks* hearing.[5]

Minor nevertheless requests that we "carve" an "exception" to *Franks*'s requirement that the defendant show that the affiant's statements were deliberately false or made with reckless disregard for the truth. He asks us to hold that, "in a case where a law enforcement affiant is relying upon information or attestations from other law enforcement personnel,"[6] "the

---

[4] *United States v. Thomas*, 627 F.3d 146, 159 (5th Cir. 2010) (quoting *United States v. Sibley*, 448 F.3d 754, 758 (5th Cir. 2006)).

[5] *See id.* (quoting *Sibley*, 448 F.3d at 758).

[6] Minor recognizes that Crain is a private citizen, not a law enforcement official. Minor nonetheless maintains that a district attorney investigator named Grant Jack may have provided Agent Moore with false information regarding whether Crain saw Minor transferring merchandise to and from his vehicle. He desires a hearing to determine whether Investigator Jack conveyed false information to Agent Moore.

No. 15-10231

challenger should not be required to meet the intentional or reckless requirement to proceed to a *Franks* hearing."[7]

Minor has not cited any authority recognizing his proposed exception to *Franks*. We therefore decline Minor's invitation to create a new exception to well-established Supreme Court precedent.

III.

The district court found that Minor committed an offense with over 250 victims and therefore increased Minor's offense level by six pursuant to U.S.S.G. § 2B1.1(b)(2)(C) (2014).[8] Minor challenges this six-level enhancement on appeal. We review the district court's interpretation and application of the U.S. Sentencing Guidelines *de novo* and its factual findings for clear error.[9]

U.S.S.G. § 2B1.1 (2014) provides the applicable framework for calculating Minor's offense level. If the defendant's offense "involved 250 or more victims," § 2B1.1(b)(2)(C) requires the court to increase the defendant's offense level "by 6 levels."[10] If, by contrast, the defendant's offense only

---

[7] The government argues that Minor did not preserve this argument, and that we should therefore review this challenge for plain error. We need not decide the applicable standard of review because Minor's argument is meritless under any standard.

[8] *See* U.S.S.G. § 2B1.1(b)(2)(C) (2014) ("If the offense . . . involved 250 or more victims, increase by 6 levels.").

This case is governed by the 2014 Sentencing Guidelines. We note that the Sentencing Commission revised § 2B1.1(b)(2)(C) in 2015. *See* U.S.S.G. § 2B1.1(b)(2)(C) (2015) ("If the offense . . . resulted in *substantial financial hardship* to *25* or more victims, increase by 6 levels." (emphasis added)).

Minor argues that we should remand his case for resentencing in light of this revision. However, as Minor acknowledges, our published decision in *United States v. Garcia-Carrillo*, 749 F.3d 376, 379-80 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 676 (2014) forecloses that argument.

[9] *United States v. Conner*, 537 F.3d 480, 489 (5th Cir. 2008) (citing *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008)).

We reject the government's argument that we should review this challenge under the plain error standard.

[10] U.S.S.G. § 2B1.1(b)(2)(C) (2014).

No. 15-10231

"involved 50 or more victims," the court should instead only "increase by 4 levels."[11]

In cases involving identification fraud, the term "victim" includes, *inter alia*, "any individual whose means of identification was used unlawfully or without authority."[12] Importantly, however, the mere "acquisition and possession of a means of identification do not qualify as using that means of identification" for the purposes of § 2B1.1(b)(2).[13] A defendant only "uses" another person's means of identification within the meaning of § 2B1.1(b)(2) if the defendant "actively employ[s]" that person's identification in the furtherance of some "criminal goal."[14]

We agree with the district court that Minor and his co-defendant actively employed the means of identification of over 250 victims in furtherance of their bank fraud scheme. Minor and his accomplice used the identification information of 361 bank customers with the object of unlawfully accessing those customers' bank accounts without their consent. Minor's use of this identification information went beyond mere "acquisition and possession of a means of identification;"[15] rather, Minor "actively employed" that identification information to further his criminal scheme.[16] Thus, the 361 bank customers were victims of Minor's offense.

Minor rejoins that, even though he *attempted* to use the identification information of 361 customers to access their bank accounts, he only *successfully* obtained access to approximately 150 accounts. He argues that an

---

[11] *Id*. § 2B1.1(b)(2)(B) (2014).
[12] *United States v. Cardenas*, 598 F. App'x 264, 267 (5th Cir. 2015) (quoting U.S.S.G. § 2B1.1 cmt. n.4(E)).
[13] *Id*. at 268.
[14] *Id*. at 269.
[15] *See id*. at 268.
[16] *See id*. at 269.

unsuccessful attempt to use a person's means of identification does not render that person a "victim" within the meaning of § 2B1.1(b)(2). He therefore posits that his crime only had 150 victims.

The Eleventh Circuit rejected a materially indistinguishable argument in *United States v. Adeife*.[17] The defendant in *Adeife* "admitted that he filed 112 fraudulent Social Security retirement benefit claims using the identities of real people without their authorization," but claimed that he did not qualify for a 50-victim enhancement because he "was only successful in receiving payment on forty-five of those claims."[18] The Eleventh Circuit held that "the fact that [Adeife] did not receive payment on all 112 claims is of no moment because the mere unlawful use of a means of identification or its use without authorization is sufficient to convert an individual into a victim for enhancement purposes."[19] The court therefore concluded that "Adeife's claim that these individuals were not victims within the meaning of [§ 2B1.1(b)(2)], simply because he was unsuccessful in receiving payments on every claim, is without merit."[20] The court accordingly ruled that "the district court's finding of fact that the offense involved 112 victims was not clearly erroneous, and, therefore, its application of the four-level enhancement was appropriate."[21]

We find *Adeife* both persuasive and analogous to the facts of this case. Even though Minor did not *successfully* access or withdraw funds from all 361 victims' accounts, he nonetheless "actively employed" their identifying information when he attempted to access their accounts. In other words, Minor "used" a stolen identity every time he called a bank posing as another individual in an attempt to breach that individual's account, even if the bank

---

[17] 606 F. App'x 580 (11th Cir. 2015).
[18] *Id*. at 581.
[19] *Id*.
[20] *Id*.
[21] *Id*.

No. 15-10231

ultimately did not grant Minor access to the account. Therefore, the district court did not err by imposing a six-level enhancement pursuant to § 2B1.1(b)(2)(C).

IV.

Minor next argues that the district court erred when calculating the financial loss that Minor intended to result from his fraudulent scheme. The district court found that Minor and his accomplice successfully misappropriated a total of $48,400 from seventeen victims' bank accounts. By dividing $48,400 by seventeen, the district court determined that Minor's average intended loss was $2,847 per victim. The court then found that Minor and his co-defendant possessed the personal identifying information of 1,107 people, and that Minor intended to attempt to breach all 1,107 of their bank accounts. The court therefore multiplied $2,847 by 1,107 to reach a total intended loss of $3,151,629. Because Minor's total intended loss was between $2,500,000 and $7,000,000, the district court enhanced Minor's sentence by eighteen levels pursuant to U.S.S.G. § 2B1.1(b)(1)(J) (2014).[22]

Minor challenges the district court's methodology for calculating the intended loss in this case. He argues that the court should have instead divided the banks' actual reported loss, $42,700, by 150, which is the number of accounts Minor successfully breached, to reach an average intended loss of $284.66 per victim. Had the district court multiplied that figure by 1,107 (*i.e.*, the number of accounts Minor intended to breach), it would have calculated a

---

[22] The Sentencing Commission revised the loss tables set forth in § 2B1.1(b)(1) in 2015 to account for inflation. However, this case is governed by the loss tables codified in the 2014 Sentencing Guidelines.

total intended loss of $315,118.62 and enhanced Minor's sentence by only twelve levels instead of eighteen.[23]

When reviewing a district court's loss calculations under the Sentencing Guidelines, we review the district court's factual findings for clear error[24] and the court's calculation methodology *de novo*.[25] "The district court receives wide latitude to determine the amount of loss and should make a reasonable estimate based on available information."[26] We "need not determine whether the district court's estimate was the *most* reasonable;"[27] rather, we need only determine whether "[t]he method used to calculate the amount of loss . . . bear[s] some reasonable relation to the actual or intended harm of the offense."[28]

U.S.S.G. § 2B1.1(b)(1), which governs sentencing in fraud cases, "creates a sliding scale that increases the defendant's base offense level by zero to thirty points depending on the amount of loss."[29] "The applicable loss is generally the greater of actual loss – which includes only reasonably foreseeable harm resulting from the fraud – and intended loss – which includes the harm intended to result from the offense."[30] Minor's intended loss exceeds the actual loss in this case,[31] so the intended loss value determines which sentencing enhancement is applicable here.

---

[23] *See* U.S.S.G. § 2B1.1(b)(1)(G) (2014) (mandating a twelve-level enhancement for intended losses between $200,000 and $400,000).

[24] *United States v. Hebron*, 684 F.3d 554, 560 (5th Cir. 2012) (citing *United States v. Sanders*, 343 F.3d 511, 520 (5th Cir. 2003)).

[25] *Id.* (citing *United States v. Harris*, 597 F.3d 242, 250-51 (5th Cir. 2010)).

[26] *United States v. Umawa Oke Imo*, 739 F.3d 226, 240 (5th Cir. 2014) (quoting *United States v. Jones*, 475 F.3d 701, 705 (5th Cir. 2007)).

[27] *Hebron*, 684 F.3d at 564 (emphasis added).

[28] *United States v. John*, 597 F.3d 263, 279 (5th Cir. 2010) (quoting *United States v. Krenning*, 93 F.3d 1257, 1269 (5th Cir. 1996)).

[29] *Id.*

[30] *Hebron*, 684 F.3d at 560 (citing U.S.S.G. § 2B1.1 cmt. 3(A)).

[31] This is true no matter which party's calculation methodology we adopt.

No. 15-10231

We conclude that it was reasonable for the district court to calculate intended loss by determining the average actual loss of each account holder whose account Minor successfully breached and then multiplying that average by the total number of accounts Minor intended to access.

Indeed, we have approved similar loss calculations in other fraud cases. For instance, in *United States v. Chappell*,[32] the defendants challenged the district court's calculation of intended loss arising from the defendants' fraudulent scheme of cashing phony checks using counterfeit identification cards.[33] The district court calculated the amount of loss "by adding together the values of . . . three checks charged in the indictment, a check cashed by the defendants in Frankfort, Kentucky, . . . five checks found by police in the getaway car, and 16 checks reflected on [the defendants'] typewriter ribbon, for a total of \$4,296.29."[34] The court "then assessed the value of . . . 51 blank checks found in the [defendants'] car and hotel room at \$13,617 by assigning to each the average value of the checks actually recovered. The district court thus concluded that the defendants intended to inflict a total loss of \$20,838.75."[35]

We concluded that the district court did not clearly err "by including the 51 blank checks found in the car and hotel room, or by assigning to them the average value of the other checks actually produced and negotiated."[36] We therefore concluded that the court's calculation constituted "a reasonable estimate of the loss."[37]

Here, too, the district court did not clearly err by determining the average actual loss of each account holder whose account Minor successfully

---

[32] 6 F.3d 1095 (5th Cir. 1993).

[33] *Id.* at 1097, 1101.

[34] *Id.* at 1101.

[35] *Id.*

[36] *Id.* (citing *United States v. Sowels*, 998 F.2d 249 (5th Cir. 1993)).

[37] *Id.* (quoting U.S.S.G. § 2F1.1, cmt. 8).

No. 15-10231

breached and then multiplying that average by the total number of accounts Minor intended to access. Because the district court's calculations are not unreasonable, the court did not err by applying an eighteen-level enhancement pursuant to § 2B1.1(b)(1)(J).[38]

V.

Finally, Minor asks us to remand for resentencing because his sentence is out of step with the 2015 Sentencing Guidelines. However, Minor concedes that our published opinion in *United States v. Garcia-Carrillo*[39] forecloses this argument. We therefore affirm Minor's conviction and sentence.

AFFIRMED.

---

[38] We likewise reject Minor's argument that the district court failed to formulate an estimate "based on available information" as required by U.S.S.G. § 2B1.1 cmt. n.3(C) (2014).

[39] 749 F.3d 376, 379-80 (5th Cir. 2014).