# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-40222

United States Court of Appeals
Fifth Circuit

**FILED**
January 9, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee

v.

EUNEISHA HEARNS,

　　Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before WIENER, CLEMENT, and HIGGINSON, Circuit Judges.

WIENER, Circuit Judge:

　　Defendant-Appellant Euneisha Hearns was convicted of one count of conspiracy to commit bank fraud. The district court attributed to Hearns loss amounts from nine additional transactions that allegedly occurred within the same scheme to defraud mortgage lenders when calculating her advisory range under the Sentencing Guidelines. The court concluded that her advisory Guidelines range was 46 to 57 months in prison and sentenced her to 46 months imprisonment followed by 5 years supervised release. The district court also held Hearns jointly and severally liable with her co-conspirators for restitution totaling $180,235.45 and ordered her to pay a special

No. 16-40222

assessment of $100. We affirm Hearns's conviction, vacate her sentence, and remand for resentencing.

## I. FACTS AND PROCEEDINGS

Hearns was a mortgage loan officer who was charged in a one-count amended second superseding indictment ("the indictment") with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. As part of the conspiracy, Hearns made materially false statements on prospective buyers' loan applications to help them obtain loans for which they did not qualify. In June 2008, a co-conspirator referred a prospective buyer who was interested in purchasing property at 4006 Brownstone Ct., Dallas, Texas ("the Brownstone Property") to Hearns to obtain a mortgage loan. Despite knowing that the buyer did not have enough money to make a down payment on the Brownstone Property and likely would not qualify for the loan, Hearns prepared and submitted a loan application with materially false statements on his behalf. As a result, Countrywide Bank, FSB ("Countrywide") provided the buyer with a loan to purchase the Brownstone Property. The buyer purchased the Brownstone Property, but he ultimately defaulted on the loan and the bank foreclosed on the property.

The indictment charged Hearns with conspiring to knowingly execute a scheme to defraud Countrywide "[f]rom [o]n or about June 11, 2008, . . . through on or about July 1, 2008." At the conclusion of a four-day trial, the jury convicted Hearns of one count of bank-fraud conspiracy. The presentence report ("PSR") prepared after trial attributed to the conspiracy a total loss of $865,940.18, which included $180,235.45 for the Brownstone Property plus loss amounts related to nine other properties. Based on the total loss amount, Hearns's base offense level was 21, pursuant to United States Sentencing

No. 16-40222

Guidelines ("USSG") § 2B1.1 and § 2X1.1.[1] Her offense level was increased by two levels for "abus[ing] a position of public or private trust," pursuant to USSG § 3B1.3, for a total offense level of 23. With Hearns's criminal history category of I, her sentencing range was 46 to 57 months.[2]

Hearns objected to the PSR, contending that the loss figure should have been limited to $180,235.45 for the Brownstone Property, which would have reduced her base offense level from 21 to 17.[3] The district court overruled Hearns's objection at the sentencing hearing and ruled that the total loss of $865,940.18 was attributable to the conspiracy and was foreseeable by Hearns. She was sentenced to 46 months imprisonment followed by 5 years supervised release. The district court also held Hearns jointly and severally liable with her co-conspirators for restitution totaling $180,235.45 and ordered her to pay a special assessment of $100. Hearns timely appealed.

II. ANALYSIS

Hearns asserts on appeal that (1) her conviction violated the Ex Post Facto Clause of the U.S. Constitution, (2) the court constructively amended the indictment by not requiring the jury to find that the defrauded institution was a "mortgage lending business," and (3) the court incorrectly determined the amount of loss for which Hearns was responsible.

---

[1] All references to the Sentencing Guidelines are to the 2015 edition.

[2] U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (U.S. SENTENCING COMM'N 2015).

[3] U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(a)(1), (b)(1)(F) (U.S. SENTENCING COMM'N 2015). With the two-level increase under USSG § 3B1.3, Hearns's total offense level would have been 19, and her sentencing range would have been 30 to 37 months. U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (U.S. SENTENCING COMM'N 2015).

No. 16-40222

A.　　Ex Post Facto Challenge

Hearns argues that her conviction violates the Ex Post Facto Clause of the U.S. Constitution because Countrywide was not a "financial institution" as statutorily defined at the time of her offense conduct, so "the conduct for which she was convicted was not a crime at the time she engaged in the conduct." Because Hearns did not raise this argument in the district court, we review it for plain error.[4] "Plain error exists if (1) there is an error, (2) the error is plain, . . . (3) the error affect[s] substantial rights and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."[5]

The Constitution provides that "[n]o . . . ex post facto [l]aw shall be passed."[6] A law violates this clause "if it (1) punishes as a crime an act previously committed which was not a crime when done; (2) makes more burdensome the punishment for a crime after it has been committed; or (3) deprives a defendant of any defense available according to the law at the time the charged act was committed."[7]

The indictment charged Hearns with conspiracy to commit bank fraud against Countrywide from June 11, 2008, through July 1, 2008. In 2008, 18 U.S.C. § 1344 made it a crime to "knowingly execute[], or attempt[] to execute, a scheme or artifice . . . (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false

---

[4] *United States v. Hickman*, 331 F.3d 439, 445 (5th Cir. 2003).

[5] *United States v. Gordon*, 838 F.3d 597, 604 (5th Cir. 2016) (alterations in original) (quoting *United States v. Garcia-Carrillo*, 749 F.3d 376, 378 (5th Cir. 2014) (per curiam)).

[6] U.S. CONST. art. I, § 9, cl. 3.

[7] *Hickman*, 331 F.3d at 445.

4

or fraudulent pretenses, representations, or promises."[8] "It is the financial institution itself . . . that is the victim of the fraud the statute proscribes."[9] Title 18 of the United States Code provided nine definitions of "financial institution" in 2008.[10] Hearns insists that the government relied on a tenth definition of "financial institution"—"a mortgage lending business"—that was not added until 2009.[11]

The government responds on appeal that it used the definition of "financial institution" found in 18 U.S.C. § 20(1) at the time of Hearns's charged conduct: "an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act)." Section 3(c)(2) of the Federal Deposit Insurance Act defined "insured depository institution" as "any bank or savings association the deposits of which are insured by the [Federal Deposit Insurance] Corporation."[12]

Although the indictment identified Countrywide as "a residential mortgage lender," it also defined Countrywide as "a financial institution" whose "deposits were insured by the Federal Deposit Insurance Company," thus satisfying the definition of "financial institution" at the time of the offense conduct.[13] At trial, the government presented evidence to show that

---

[8] 18 U.S.C. § 1344 (West 2008). The text of 18 U.S.C. § 1344 has not changed since 2008.

[9] *United States v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992).

[10] 18 U.S.C. § 20 (West 2008).

[11] *See United States v. Grasso*, 724 F.3d 1077, 1089 n.13 (9th Cir. 2013) ("In 2009, Congress amended 18 U.S.C. § 20(1), which supplies the definition of 'financial institution' for § 1344, to cover 'mortgage lending businesses' . . . . This amendment applies prospectively . . . ." (citation omitted)); 18 U.S.C. § 20(10) (West 2010).

[12] 12 U.S.C. § 1813(c)(2) (West 2008).

[13] *See* 18 U.S.C. § 20(1) (West 2008) (defining "financial institution" as "an insured depository institution (as defined by section 3(c)(2) of the Federal Deposit Insurance Act)").

No. 16-40222

Countrywide satisfied this definition.[14] Hearns did not present evidence to the contrary or otherwise challenge that Countrywide was insured by the Federal Deposit Insurance Company at trial or at sentencing.

At the close of the evidence, the district court instructed the jury that the government could establish bank fraud under 18 U.S.C. § 1344 in either one of two ways: (1) to hold Hearns guilty of bank-fraud conspiracy under § 1344(1), the jury must find, among other factors, that "Countrywide, FSB, was a wholly-owned subsidiary of Bank of America, a financial institution"; (2) to hold Hearns guilty of bank-fraud conspiracy under § 1344(2), the jury must find that "Countrywide Bank, FSB, was a wholly-owned subsidiary of Bank of America, a financial institution insured by the Federal Deposit Insurance Corporation."[15] The district court never instructed the jury that it had to find

---

[14] The vice president and business support manager of Bank of America, which later acquired Countrywide, testified as follows:

> Q: [In June of 2008], was Countrywide Bank, FSB, a federally insured financial institution?
>
> A: Yes.
>
> Q: Their accounts were insured by the [Federal Deposit Insurance Corporation]; is that correct?
>
> A: Yes.

[15] Curiously, the reference to Bank of America also appears in both the government's and Hearns's proposed jury instructions. As the government concedes, however, the record reflects that Bank of America did not acquire Countrywide until after Hearns completed her offense conduct.

Also, the government's proposed jury instructions contained the definition of "financial institution" found in 18 U.S.C. § 20(1) in 2008: "an institution that is insured by the Federal Deposit Insurance Corporation." Although the government included this definition in the context of proposed instructions regarding a later-dismissed money-laundering count under 18 U.S.C. § 1956, the same definitions of "financial institution," found in 18 U.S.C. § 20, applied to both the money-laundering count under 18 U.S.C. § 1956 and the bank-fraud conspiracy count under 18 U.S.C. §§ 1344, 1349. See 18 U.S.C. § 20 (West 2008) (defining the term "financial institution" "[a]s used in this title"). The district court, however, did not include this definition in its instructions to the jury.

that Countrywide was a "mortgage lending business" pursuant to the definition of "financial institution" added in 2009.

Hearns fails to show that the definition of "financial institution" added in 2009 was applied retroactively,[16] and the record demonstrates that the government and the district court used the term "financial institution" as it was defined in 2008. Hearns thus fails to demonstrate any ex post facto error in her conviction.

B.     Constructive Amendment of the Indictment

Hearns claims that the district court constructively amended the indictment by failing to instruct the jury that it must find that Countrywide was a "mortgage lending business." "[A]n action of either the judge or prosecutor [that] allows the jury to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged constitutes an improper constructive amendment and is grounds for reversal."[17]

The indictment charged Hearns with conspiracy to commit bank fraud against Countrywide and defined it as "a financial institution" whose "deposits were insured by the Federal Deposit Insurance Company." As discussed above, the government was relying on one of the nine definitions of "financial institution" set forth in 18 U.S.C. § 20 in 2008—namely, "an insured depository institution." "Residential mortgage lender" was not a statutory definition of "financial institution" at the time of Hearns's offense conduct. The district court did not err when it did not instruct the jury that it must find that Countrywide is a "residential mortgage lender."

---

[16] *See Ortiz v. Quarterman*, 504 F.3d 492, 499 (5th Cir. 2007) ("Under the *Ex Post Facto* Clause, [the appellant] must prove that the law, retroactively applied to him, caused him some disadvantage.").

[17] *United States v. Cooper*, 714 F.3d 873, 878 (5th Cir. 2013) (alterations in original) (internal quotation marks omitted).

## C.    Loss Amount

Hearns contends that the district court erred procedurally in determining that the loss amount for which she was responsible totaled $865,940.18, thereby miscalculating her Sentencing Guidelines advisory range. We agree.

### 1. Standard of Review

We review factual findings related to a district court's loss calculations under the Sentencing Guidelines for clear error and that court's calculation methodology de novo.[18] A relevant-conduct determination is a finding of fact.[19] "A sentence will be upheld unless it was imposed in violation of law, was an incorrect application of the sentencing guidelines, or is outside the range of the applicable sentencing guideline."[20] "Failure to object to either the PSR or the district court's sentence," however, "results in review for plain error."[21]

The parties dispute whether Hearns preserved this challenge. "There is '[n]o bright-line rule . . . for determining whether a matter was raised below.'"[22] "[I]f a party wishes to preserve an argument for appeal, the party must press and not merely intimate the argument during the proceedings before the district court. An argument must be raised to such a degree that the district

---

[18] *United States v. Minor*, 831 F.3d 601, 607 (5th Cir. 2016); *see United States v. Ocana*, 204 F.3d 585, 588 (5th Cir. 2000).

[19] *United States v. Ekanem*, 555 F.3d 172, 175 (5th Cir. 2009).

[20] *Ocana*, 204 F.3d at 588.

[21] *Id.*; *see United States v. Garcia-Perez*, 779 F.3d 278, 281 (5th Cir. 2015) ("When a defendant objects to his sentence on grounds different from those raised on appeal, we review the new arguments raised on appeal for plain error only." (quoting *United States v. Medina–Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003))).

[22] *United States v. Brown*, 561 F.3d 420, 435 n.12 (5th Cir. 2009) (alterations in original) (quoting *Castillo v. Cameron Cty.*, 238 F.3d 339, 355 n.21 (5th Cir. 2001)).

court has an opportunity to rule on it."[23] "The raising party must present the issue so that it places the opposing party and the court on notice that a new issue is being raised."[24]

Hearns objected to the PSR, claiming that the probation officer "provided contradictory information with regard to the total loss amount deemed attributable to his client ($865,940.18) and the amount of restitution owed by his client." Hearns argued that the loss figure should have been limited to the loss associated with the Brownstone Property, or $180.235.45, which would have reduced her base offense level from 21 to 17.[25] At the sentencing hearing, Hearns's attorney addressed her objection: "We would ask that the base level be reduced to 17. We would base that on the fact that Ms. Hearns was convicted for the charge on the 4006 Brownstone property. The loss amount was approximately $180,000. We would ask that that be used as the amount to determine the calculation."

The probation officer responded to Hearns's objection to the PSR, noting that the total loss amount was the result of relevant conduct and thus was appropriately used to calculate Hearns's offense level pursuant to USSG § 1B1.3(a)(1)(B). At the sentencing hearing, in response to Hearns's objection, the Assistant United States Attorney stated that the fraud related to the nine additional properties was "relevant conduct and . . . part of the same course of

---

[23] *Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148, 157 (5th Cir. 2013) (quoting *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005)); *see also Garcia-Perez*, 779 F.3d at 282 ("The 'objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction.'" (quoting *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009))).

[24] *Kelly v. Foti*, 77 F.3d 819, 823 (5th Cir. 1996) (quoting *Portis v. First Nat'l Bank*, 34 F.3d 325, 331 (5th Cir. 1994)).

[25] Hearns's base offense level would be 7, pursuant to USSG § 2B1.1(a)(1), plus an additional 10 levels for a loss greater than $150,000, pursuant to USSG § 2B1.1(b)(1)(F), as opposed to a 14-level increase for a loss greater than $550,000 pursuant to § 2B1.1(b)(1)(H).

conduct," language found in § 1B1.3. The district court overruled Hearns's objection, concluding that the total loss amount "ha[d] to do with the amount attributable to . . . [the] conspiracy." The district court did not use the term "relevant conduct," but it noted that the nine other transactions were "foreseeable" to Hearns as part of the conspiracy, a factor considered in a relevant-conduct determination under § 1B1.3(a)(1)(B)(iii). The court also adopted the factual findings and Guidelines applications contained in the PSR, which relied on § 1B1.3(a)(1)(B) when attributing the loss amounts for the nine other properties to Hearns and her co-conspirators. The probation officer's response to Hearns's objection to the PSR and the exchange at the sentencing hearing reflect that both the government and the district court understood Hearns's challenge to address whether the alleged fraud related to the nine additional properties qualified as relevant conduct under the Guidelines.[26]

Hearns's challenge to the PSR, which was addressed at the sentencing hearing, was therefore sufficient to put the government and the district court on notice that Hearns was raising a relevant-conduct challenge and "to permit the district court to rule on [her objection]."[27] We review Hearns's challenge for clear error.

---

[26] *See Ocana*, 204 F.3d at 589 (finding that, "[w]hile [the defendant] did not specifically cite to the USSG section which the PSR applied," she made "a general objection that notified the court of her disagreement" and thus "sufficiently raised the issues which she now appeals").

[27] *See In re Liljeberg Enters., Inc.*, 304 F.3d 410, 427 n.29 (5th Cir. 2002) (noting that an argument is preserved "if the argument on the issue before the district court was sufficient to permit the district court to rule on it"); *see also Ocana*, 204 F.3d at 589 ("The purpose of requiring defendants to make timely objections to the PSR and actual sentence is 'founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact.'" (quoting *United States v. Ruiz*, 43 F.3d 985, 988 (5th Cir. 1995))).

*2. Whether the District Court Clearly Erred*

"The sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence."[28] "A district court may . . . exercise wide evidentiary latitude at sentencing and may look to the whole conspiracy to determine whether the acts of others were reasonably foreseeable."[29] But the district court "must still make specific findings as to the scope of that conspiracy."[30] "These findings need not be expressly made, but the meaning of the [district] court's findings must be clear."[31] "We will not upset these findings unless they are implausible in light of the record as a whole."[32]

The loss amount "need not be determined with precision," but "to satisfy th[e] clear error test all that is necessary is that the finding be plausible in light of the record as a whole."[33] "Before a court may attribute losses to a defendant's fraudulent conduct, there must be some factual basis for the conclusion that those losses were the result of fraud."[34] We generally consider the PSR "reliable evidence for sentencing purposes."[35] "In making its factual findings for sentencing, a district court may adopt the findings of the PSR without additional inquiry if those facts have an evidentiary basis with

---

[28] *United States v. Cooks*, 589 F.3d 173, 185 (5th Cir. 2009) (quoting *United States v. Holbrook*, 499 F.3d 466, 468 (5th Cir. 2007)).

[29] *United States v. Mateo Garza*, 541 F.3d 290, 293 (5th Cir. 2008).

[30] *Id.*

[31] *United States v. Hammond*, 201 F.3d 346, 351 (5th Cir. 1999).

[32] *Mateo Garza*, 541 F.3d at 293.

[33] *United States v. Reasor*, 541 F.3d 366, 369 (5th Cir. 2008) (internal quotation marks omitted).

[34] *United States v. Bernegger*, 661 F.3d 232, 242 (5th Cir. 2011) (per curiam) (quoting *United States v. Randall*, 157 F.3d 328, 331 (5th Cir. 1998)).

[35] *Reasor*, 541 F.3d at 369 (internal quotation marks omitted).

No. 16-40222

sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information is materially unreliable."[36] The defendant has the burden of showing that the information in the PSR is materially unreliable.[37] "If the factual recitation [in the PSR] lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence."[38]

The district court adopted the factual findings and undisputed Guideline applications contained in the PSR and concluded that "the information contained in the presentence report has sufficient indicia of reliability to support its probable accuracy." The PSR relied on USSG § 1B1.3(a)(1)(B) to consider the loss amounts related to the nine additional properties in calculating Hearns's base offense level. Under § 1B1.3(a)(1)(B), "a defendant can be liable for conduct that is (1) within the scope of the jointly undertaken criminal activity, (2) in furtherance of that criminal activity, and (3) reasonably foreseeable in connection with that criminal activity."[39]

---

[36] *United States v. Ford*, 558 F.3d 371, 377 (5th Cir. 2009) (per curiam) (quoting *United States v. Valles*, 484 F.3d 745, 759 (5th Cir. 2007)).

[37] *Id.*

[38] *United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013) (per curiam) (alteration in original) (quoting *United States v. Harris*, 702 F.3d 226, 231 (5th Cir. 2012)); *see also United States v. Windless*, 719 F.3d 415, 420 (5th Cir. 2013); *United States v. McGee*, 559 F. App'x 323, 327 n.17 (5th Cir.) (per curiam), *cert. denied*, 135 S. Ct. 130 (2014).

[39] *United States v. Gonzales*, 841 F.3d 339, 359 (5th Cir. 2016) (internal quotation marks omitted) (quoting U.S. SENTENCING GUIDELINES MANUAL § 1B1.3(a)(1)(B) (U.S. SENTENCING COMM'N 2015)). Specifically, § 1B1.3(a)(1) provides as follows:

Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

12

No. 16-40222

The PSR explained as follows: "The Government has identified 10 properties [including the Brownstone Property] that involved fraud in the mortgage loan process. Government records reflect that with respect to these properties, . . . Hearns [and her co-conspirators] were all involved in the scheme to defraud." The PSR otherwise provided no information or evidence to support the loss amounts or Hearns's involvement in the other transactions. The government presented evidence with respect to three of these properties at trial, but the remaining six properties were not mentioned either at trial or at sentencing.[40] Nothing in the record reflects when the six remaining transactions occurred, whether criminal activity was associated with the transactions, or whether Hearns was involved in them.[41] The facts contained

---

(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—

(i) within the scope of the jointly undertaken criminal activity,

(ii) in furtherance of that criminal activity, and

(iii) reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

[40] These six properties are 1610 Jensen Ct., Denton, Texas; 611 Oriole Blvd. #2401, Duncanville, Texas; 611 Oriole Blvd. #2402, Duncanville, Texas; 611 Oriole Blvd. #2403, Duncanville, Texas; 611 Oriole Blvd. #2404, Duncanville, Texas; and a duplex at 1464 and 1466 Brook Meadow Circle, Lancaster, Texas.

[41] We also note that § 1B1.3(a)(1) requires that the relevant conduct "occur[] during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense," and we have explained that this provision can temporally limit the application of § 1B1.3(a)(1). *See, e.g., United States v. Barraza*, 655 F.3d 375, 385 (5th Cir. 2011) ("[S]eparate acts or conduct that did not occur during the commission of the presently charged offense may not be relevant conduct

No. 16-40222

in the PSR regarding these six properties lack an evidentiary basis with sufficient indicia of reliability. "Although a PSR may be considered as evidence by the court when making sentencing determinations, bare assertions made therein are not evidence standing alone."[42]

On this record, the district court clearly erred when it relied on the PSR to include the loss amounts from the six properties in its calculation of Hearns's base offense level. We therefore vacate Hearns's sentence and remand for resentencing. Of course, on remand, the district court might reach the same conclusion regarding relevant conduct and the loss amount that it did initially and re-enter the same sentence.[43]

---

[under § 1B1.3(a)(1)]."); *United States v. Fowler*, 216 F.3d 459, 461–62 (5th Cir. 2000) (finding that the defendant's receipt of "other sadistic images" did not constitute relevant conduct under § 1B1.3(a)(1) because, while "[t]he electronic mailing of the image that was the basis of the count of conviction occurred at a discrete moment," the defendant's "receipt of the other, sadistic images did not occur 'during the commission of the offense of conviction'" and because "there was no proof that the sadistic images were part of preparing for the offense of conviction or avoiding detection of the crime"). Neither the PSR nor the district court explained whether these transactions occurred during the commission of the offense of conviction—here, "[f]rom [o]n or about June 11, 2008, . . . through on or about July 1, 2008"— in preparation for the offense of conviction, or in the course of attempting to avoid detection or responsibility for that offense.

By contrast, § 1B1.3(a)(2) does not contain the same temporal limitation as Subsection (a)(1). Subsection (a)(2) applies to "all acts and omissions described in [Subsection (a)(1)] that were part of the same course of conduct or common scheme or plan as the offense of conviction." Thus, conduct undertaken in the commission of separate conspiracies to defraud various victims at different times would qualify as relevant under (a)(2) as long as the separate conspiracies were part of the same course of conduct, common scheme, or plan as the offense of conviction. *See, e.g.*, *United States v. Hinojosa*, 484 F.3d 337, 341–42 (5th Cir. 2007); *United States v. Payne*, 226 F.3d 792, 796 (7th Cir. 2000). Notably, in oral argument, the government commendably conceded that this legal error—that is, the district court's application of Subsection (a)(1) rather than (a)(2)—would control.

[42] *Bernegger*, 661 F.3d at 242 (internal quotation marks omitted); *see Zuniga*, 720 F.3d at 591 ("[B]ald, conclusionary statements in a PSR are not sufficiently reliable." (internal quotation marks omitted)).

[43] *See United States v. Locke*, 643 F.3d 235, 246 (7th Cir. 2011) ("[W]e acknowledge that the district court might find—based upon sufficient evidence presented during resentencing—the conduct in the unconvicted counts relevant to [the defendant's] sentencing. It could then state its findings with specificity and, presumably, enter the same sentence we

No. 16-40222

### III. CONCLUSION

We affirm Hearns's conviction, vacate her sentence, and remand to the district court for resentencing consistent with this opinion.

---

vacate today."); *see also United States v. Marmolejo*, 139 F.3d 528, 530–31 (5th Cir. 1998) (holding that "[t]he only issues on remand properly before the district court are those issues arising out of the correction of the sentence ordered by this court" and clarifying that the district court on remand may "gather[] relevant facts and evidence on the specific and particular issues heard by the appeals court and remanded for resentencing").

If on remand the district court concludes that any defrauding allegedly related to these six properties does not constitute relevant conduct, the total loss amount would be $418,802.79, and Hearns's base offense level would be 19, pursuant to USSG § 2B1.1(a)(1) and (b)(1)(G). With the two-level increase under § 3B1.3, Hearns's total offense level would be 21, and her sentencing range would be 37 to 46 months. U.S. SENTENCING GUIDELINES MANUAL ch. 5, pt. A (U.S. SENTENCING COMM'N 2015).