# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-10240

United States Court of Appeals
Fifth Circuit

**FILED**
April 3, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

JULISA TOLENTINO,

      Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:17-CR-139-1

Before BARKSDALE, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

    Julisa Tolentino pled guilty to tax fraud and agreed to pay restitution in her plea agreement. The district court ordered her to pay over $2 million, which Tolentino argues was more than she had bargained for. We AFFIRM.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-10240

## FACTUAL AND PROCEDURAL BACKGROUND

From 2010 to 2012, Tolentino worked as a tax preparer for First Choice Tax Services, a tax preparation service with offices in Grand Prairie and Fort Worth, Texas. Tolentino worked in Grand Prairie. All of the returns filed by First Choice for tax years 2009 and 2010 were filed from the Grand Prairie location using Tolentino's Preparer Tax Identification Number. For tax year 2011, the Fort Worth office used a separate identifier. In November 2011, the IRS identified First Choice as having a significantly higher percentage of tax refunds compared to the national average. The IRS conducted two undercover operations in which Tolentino prepared false tax returns for agents by claiming false education credits and false business expenses and losses.

In June 2012, IRS agents executed a search warrant for First Choice client records. The IRS then interviewed seven First Choice clients who identified Tolentino as their tax return preparer. Each of those clients' returns included a false tax education credit, for a total tax loss of $37,217.

Tolentino was charged in a single-count information with knowingly and willfully aiding and assisting in the preparation and presentation to the Internal Revenue Service of a false and fraudulent tax return under 26 U.S.C. § 7206(2). Tolentino pled guilty to the offense and agreed to pay restitution. The Pre-Sentence Report ("PSR") used the $37,217 figure as its recommended restitution amount.

Tolentino admitted in her factual resume that she falsely claimed that her clients were students, had education expenses, and were entitled to education credits. Tolentino's plea agreement explained that she could be subject to the maximum penalties of three years' imprisonment; "a fine not to exceed $250,000, or twice any pecuniary gain to the [d]efendant or loss to the victims;" "a term of supervised release of up to 1 year;" "a mandatory special assessment of $100;" restitution "arising from all relevant conduct, not limited

2

to that arising from the offenses of conviction alone;" and "costs of incarceration and supervision." In another portion of the plea agreement, Tolentino agreed to pay restitution pursuant to 18 U.S.C. §§ 3663(a)(1), (3) and 3663A for "losses resulting from all of her criminal conduct involving the preparing and filing of false and fraudulent tax returns," which would not be "limited to losses stemming from the offense of conviction alone." Tolentino further agreed to be "jointly and severable liable for payment of all restitution," as written in the PSR.

The PSR found that Tolentino was "accountable for the intended tax loss to the United States caused by her actions." For tax years 2009 and 2010, Tolentino's tax identification number was used for all returns filed from both the Fort Worth and the Grand Prairie First Choice offices. In those returns "there was $1,685,520 in false education credits claimed." For the 2011 tax year, "$627,051 in false education credits" were claimed on returns submitted by the Grand Prairie office under Tolentino's tax identification number. The PSR calculated Tolentino's total intended tax loss at $2,312,561.

In determining Tolentino's Guidelines range, the PSR used the "intended tax loss" figure and concluded her base offense level was 22 pursuant to Section 2T4.1(I). After applying a two-level enhancement under Section 2T1.4(b)(1)(B), and a three-level downward adjustment under Section 3E1.1(a)-(b), Tolentino's total offense level was 21. That offense level, when combined with her criminal history category of I, resulted in a Guidelines sentence at the statutory maximum for her offense which was 36 months.

The PSR also stated: "Discretionary restitution in the amount of $37,217 has been determined, and is due and owed to the" IRS. The Government objected to the restitution amount. It relied on Tolentino's agreement to pay restitution "for losses resulting from all of her criminal conduct involving the preparing and filing of false and fraudulent tax returns." Thus, the

Government argued Tolentino should be ordered to pay restitution in "an amount equal to the tax loss attributable" to her.

In the PSR addendum, the probation officer accepted the Government's objection and stated that the amount of restitution should be equal to the "tax loss attributable to the defendant, as determined by the Court." Tolentino's objection to the loss amount was rejected, finding the tax-loss calculation to be appropriate based on the meaning of "relevant conduct" and the Guideline instruction to include "all conduct violating the tax laws" as part of the same course of conduct "unless the evidence demonstrates that the conduct is clearly unrelated." The addendum stated that "the defendant was engaged in the jointly undertaken criminal activity of filing false tax returns with others at" First Choice and that the tax loss calculation was reasonable.

At the sentencing hearing, Tolentino argued that for the first two years of the indictment period, her identification number was the number used by all preparers at both the Fort Worth and Grand Prairie First Choice offices. Tolentino urged that the losses allocable to her be cut in half. The district court disagreed, finding the "fair and legitimate inferences from the evidence" to be that "the defendant joined in a criminal activity with others at [First Choice] and that she and the others acted to further join this criminal activity." The district court adopted the fact findings contained in the PSR, as well as the probation officer's conclusions as to the Guidelines calculations.

The district court imposed a sentence of six months' imprisonment and ordered restitution in the amount of $2,312,561. After imposing the sentence, the district court asked if there were any objections, to which the defendant "simply reurge[d] the objections as set out in the pleadings." Tolentino filed a timely appeal.

No. 18-10240

DISCUSSION

Tolentino raises two primary arguments on appeal. First, she argues that the district court erred by never insisting on evidence of actual loss, as the IRS could have recovered money owed by the taxpayers after the fraud was detected. Second, Tolentino argues that the restitution award is invalid because it is greater than what she agreed to pay in the plea agreement. We review each of her arguments.

I.   *Actual Loss Calculation*

Tolentino urges us to apply *de novo* review to the issue of the amount of loss because this case concerns the legality of a restitution order. *See United States v. Arledge*, 553 F.3d 881, 897 (5th Cir. 2008). We have held that ordering restitution without competent record evidence of a loss is an illegal sentence, an argument we review *de novo*. *See United States v. Chem. & Metal Indus.*, 677 F.3d 750, 752 (5th Cir. 2012). In that case, though, there was no evidence of any loss to the victim, and restitution should not have been awarded at all. *Id.* Tolentino does not argue that. Instead, she claims the amount is wrong. The cited precedent is not our guide.

The principal factor establishing our standard of review is that Tolentino failed to challenge the payment of restitution in the district court. Tolentino certainly made some objections. In district court she objected to the loss calculation in the PSR of $2,312,561 based upon Sections 2T1.4 and 2T4.1 of the Guidelines. Those Guidelines set the base offense level for calculating her sentencing range. She argued the full weight of the calculated loss should not be attributed to her because fraudulent tax returns were prepared and filed by other individuals too. To have preserved the issue she raises now, those objections needed to challenge the amount of restitution. They did not.

5

No. 18-10240

In her written response to the Government's objections to the PSR, which had urged restitution in "an amount equal to the tax loss attributable to the defendant," Tolentino made only the brief statement that awarding the amount of $37,217 would be "consistent with the findings in the government's investigation." At the sentencing hearing, prior to the district court's sentence, Tolentino suggested "why not just take the losses from those first two years and cut them in half?" After her sentence was announced, Tolentino did not object to the amount of restitution.

We conclude there never was an objection that pointed out an error in the manner the Government calculated restitution. Plain-error review thus applies. *United States v. Lozano*, 791 F.3d 535, 537 (5th Cir. 2015). Tolentino must show a forfeited error that is clear or obvious and that affects her substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If she makes such a showing, this court has the discretion to correct the error but "only if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

Restitution is generally limited to the actual loss caused by the defendant's conduct and may include restitution arising from all relevant conduct when agreed to in a plea agreement. *See United States v. Maturin*, 488 F.3d 657, 660-61 (5th Cir. 2007). We will discuss in the next section of the opinion the questions about the meaning of her plea agreement.

In ordering restitution, the "district court may adopt the facts contained in [the PSR] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *United States v. Smith*, 528 F.3d 423, 425 (5th Cir. 2008) (citation omitted). "Any dispute as to the proper amount or type of

6

restitution [is] resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e).  This court may affirm the restitution order even in the absence of express factual findings if the record supports it.  *See United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012).

Here, the PSR found that each time First Choice filed a tax return with a fraudulent education credit, the IRS lost taxes that were otherwise owed. The PSR found the total amount of false education credits submitted with Tolentino's identification number to be $2,312,561.  The district court adopted the PSR at sentencing.  Tolentino did not present evidence challenging the loss calculation, instead arguing for a "modest concession" to reduce the losses given that others had allegedly used her identification number.  The district court overruled that objection and adopted the loss calculation in the PSR. Although the PSR was calculating "intended tax loss" to determine the Guidelines range, the PSR's findings that the IRS lost $2,312,561, due to First Choice's submission of tax returns claiming fraudulent education credits, provided the district court with an adequate basis to support the restitution order.  *Id.*

In an effort to reduce that total, Tolentino argues she should receive the benefit of any recovery by the IRS from the taxpayers themselves after the fraud was detected.  The speculative question was raised for the first time on appeal.  Even had it been argued in district court, it would not suffice to rebut the PSR's findings.  During oral argument here, the Government stated that adjustments in restitution amounts are made due to such recoveries.  That certainly would be a just approach, but our rejection of the argument is based on the lack of evidence in the record to dispute the total.

No. 18-10240

## II.    *Restitution Contemplated Within Plea Agreement*

The restitution award in this case is based on the authority of the district court to "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement."    § 3663(a)(3).    Tolentino argues that the restitution order exceeded the amount in her plea agreement that she committed to pay.  She insists she agreed to pay for losses resulting only from her own conduct, which do not include losses resulting from tax returns prepared and submitted by other employees at First Choice.

Our first issue is determining the standard of review.  We restate our earlier summary of Tolentino's district court objections.  After the district court declared the amount of restitution at sentencing, her counsel only "reurge[d] the objections as set out in the pleadings."  In those pleadings, Tolentino had agreed with the initial PSR that the restitution of $37,217 was "consistent with the findings in the government's investigation."  Counsel's references to this earlier pleading fall short.  Regardless of whether that total was consistent with the investigation, Tolentino never objected to the amount of restitution the district court had just declared she owed.  Tolentino's objection was not "sufficient to put the government and the district court on notice" of an objection to the scope of the plea agreement.  *United States v. Hearns*, 845 F.3d 641, 649 (5th Cir. 2017).

Even though the issue is a new one on appeal, Tolentino argues that when Section 3663(a)(3) is the source of a district court's authority, imposing restitution beyond a defendant's agreement makes a sentence illegal. Therefore, we should give *de novo* review because that is the standard to review whether a sentence exceeds the statutory maximum.  *See Chem. & Metal Indus.*, 677 F.3d at 752.  The Government responds that plain-error review applies because Tolentino did not challenge the amount of restitution in district court.  *See United States v. De Leon*, 728 F.3d 500, 507 (5th Cir. 2013).

No. 18-10240

In deciding the nature of the issue before us, it can be helpful to decide what issues are not in play. We do not see this as a legal question involving the interpretation of Section 3663(a)(3). The statute indisputably requires that Tolentino have agreed to the scope of restitution. Therefore, we are not interpreting the statute but instead interpreting the agreement. Another panel of this court determined that a similar claim "does not require interpreting § 3663(a)(3)" but only required addressing "the quantum of restitution intended under the plea agreement." *United States v. Lanphier*, 647 F. App'x 418, 419 (5th Cir. 2016). Because no relevant objection was made in district court, our review was for plain error. *Id.*

We categorize the issue before us as one of interpreting the plea agreement. When the question requires identifying the promises the Government made that induced the defendant to enter the plea agreement, we have held we must assess the defendant's reasonable understanding of the agreement. *United States v. Barnes*, 730 F.3d 456, 457 (5th Cir. 2013). Answering that question requires us to apply contract interpretation principles. *Id.* When the argument as to the Government's breach of its promises is not preserved, our review is for plain error. *Id.*[1] The question here is not the promise made by the Government but instead one made by the defendant. Still, the answer depends on contract interpretation assessed through the plain error standards.

As we summarize from our previous greater detailing of the standard, reversal for plain error requires there to be error that is plain, affecting substantial rights of the defendant, and at the court's discretion is corrected in

---

[1] When the issue of the Government's possible breach of the plea agreement is preserved, our review is *de novo*, "accepting the district court's factual findings unless clearly erroneous." *United States v. Pizzolato*, 655 F.3d 403, 409 (5th Cir. 2011) (citation omitted).

appropriate circumstances.  We add that an error is not plain if it is "subject to reasonable dispute."  *See Puckett*, 556 U.S. at 135.

We therefore give plain-error review to the district court's conclusion that the restitution order was within the scope of the plea agreement.  The plea agreement specifically stated that Tolentino would be liable for "losses resulting from all of her criminal conduct involving the preparing and filing of false and fraudulent tax returns, and . . . that restitution will not be limited to . . . the offense of conviction alone."  The agreement also stated that the maximum restitution could "include restitution arising from all relevant conduct, not limited to . . . the offenses of conviction alone."  Tolentino also agreed she would be "jointly and severable liable for payment of all restitution," and the "actual amount of restitution [would] be determined by the Court."

Tolentino claims that by including the language, "*her* criminal conduct," she intended to be liable only for returns she herself filed.  Other sections of the plea agreement, though, stated that restitution could arise from "*all* relevant conduct," and she agreed to be "jointly and severable liable for payment of all restitution."  We acknowledge that the broader language is in a section of the agreement setting out the maximum penalties, while the language on which she relies is in a section setting out restitution.  That factor was for the district court to take into account.

Whether the better interpretation of this agreement should limit restitution by reference only to Tolentino's own conduct or instead could include the relevant conduct of others need not be determined on our plain-error review.  It is enough to say that the choice between the two is subject to reasonable dispute.  Consequently, no clear or obvious error occurred in the interpretation of the plea agreement.  *See Puckett*, 556 U.S. at 135.

Tolentino also argues that even if she agreed in the plea agreement to pay restitution beyond her own criminal conduct, the tax returns filed by

others at First Choice did not constitute "relevant conduct" for the purposes of Guidelines Section 1B1.3.[2]   Because relevant conduct is a fact finding, we review Tolentino's relevant-conduct argument for clear error.  *See Hearns*, 845 F.3d at 647-649.

Tolentino's basic argument is that the returns filed by other employees were not "in furtherance of jointly undertaken criminal conduct," citing Guidelines Section 1B1.3(a)(1)(B)(i), (ii).  The district court disagreed, finding that Tolentino and the other tax preparers "all took the same and applied the same kind of" fraudulent education credits; Tolentino "joined in a criminal activity with others at [First Choice] and . . . she and the others acted to further join this criminal activity;" "she was trained to commit this kind of fraud;" "she understood the scope, the planning of this activity, and exercised discretion in preparing returns;" and the scheme was "jointly undertaken activity."  The district court found that Tolentino's relevant conduct would include returns filed by other employees of First Choice using her identification number under the jointly undertaken criminal activity language of the Guidelines.

In deciding whether this was clear error, we accept that the district court has "wide evidentiary latitude at sentencing and may look to the whole conspiracy to determine whether the acts of others were reasonably foreseeable, but it must still make specific findings as to the scope of that conspiracy."  *United States v. Mateo Garza*, 541 F.3d 290, 293 (5th Cir. 2008) (citations omitted).  The district court may do so even if the defendant is not charged with conspiracy.  *Id.* at 292-93.  Those findings will be accepted "unless they are implausible in light of the record as a whole."  *Id.* at 293 (citation omitted).  Relevant conduct defined as "jointly undertaken criminal activity"

---

[2] We note that Tolentino uses the Guidelines definition of relevant conduct for the meaning to be ascribed to the language in her plea agreement concerning restitution.  The Government argues the same.  Consequently, we do as well.

requires a finding that the conduct of others was "within the scope" of the joint activity; "in furtherance of that criminal activity;" and "reasonably foreseeable in connection with that criminal activity" that "occurred during the commission of the offense of conviction" or "in preparation for that offense." § 1B1.3(a)(1)(B).

The following facts are relevant. The PSR described that Tolentino, along with her codefendants, employed the same *modus operandi* when they consistently and repeatedly submitted tax returns with fraudulent education credits. The Government surmised that the following number of returns submitted by First Choice included fraudulent education credits: (i) for tax year 2009, 298 out of 379 returns; (ii) for tax year 2010, 797 out of 1016 returns; and (iii) for tax year 2011, 400 out of 500 returns. Tolentino was aware that she was submitting returns with fraudulent education credits and knew that her codefendants were as well. The returns for which the IRS's loss was calculated were submitted using Tolentino's identification number. Tolentino's personal returns also included fraudulent education credits. At one point, when Tolentino knew that an IRS auditor was about to examine First Choice's files, she and her codefendants physically altered the files so that they could avoid detection of the fraudulent education credits.

Under a clear error standard, we find the district court's conclusion that the total loss amount arose from Tolentino's relevant conduct in this jointly undertaken activity was not "implausible in light of the record as a whole." *Mateo Garza*, 541 F.3d at 293.

AFFIRMED.